People of the State of Illinois, Plaintiff-Appellee, v. Coylee Harris, Defendant-Appellant.

Gen. No. 50,867.

First District, Third Division.

January 30, 1969.

Anthony F. Mannina and Sam Adam, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. James Gildea, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

About midnight on Thanksgiving eve, November 26, 1963, Mabel Hines, Lolita Davis, David Clifton, Thomas Scott and the defendant, Coylee Harris, left one Chicago tavern and started to walk to another one known as Pepper's Lounge. After walking part way Scott hailed a cab. On the way, Scott told the driver he had a stop to make. The cab stopped under a viaduct at 44th and Calumet and, when it did, Scott pulled out a gun and said, "Hand it over." Hines, Davis and Clifton jumped out of the cab and ran the rest of the way to Pepper's Lounge. Fifteen minutes later Scott and Harris entered the tavern.

In the early morning of November 27th police officers, responding to a radio call, came upon the cab in the middle of the street under the viaduct. They found the driver, James Arline, Jr., in the front seat. Blood was running from a bullet wound in the back of his head. He appeared to be dead and this was confirmed upon taking him to a hospital.

A few days later police officers arrested David Clifton. After talking to him they arrested his cousin, Coylee Harris. The arrest was made without a warrant at 6:15

308

a. m. at his home. About 10:35 that night he signed a statement in which he said that he and Scott had planned, the night before the shooting, to rob a cabdriver. The plan became concrete when they whispered together on the fatal ride. Scott asked, "how about it?" and Harris replied that he "was game." He said that when the cab stopped Clifton and the two women got out and he told them to run. Scott put a gun to the driver's head and instructed him to be still. Scott then reached over and went through the driver's pockets. As he did, Harris warned that the driver was moving his hand. Scott said "run" and Harris fled. Eventually he went to Pepper's Lounge and there joined Scott, Clifton and the two women. Scott told them not to say anything because they were all in the clear.

The five occupants of the cab were indicted for the murder. Harris' motion for a severence was allowed and he was tried alone. He was found guilty and sentenced to the penitentiary for a term of fourteen to twenty years.

At his trial he admitted giving a statement to the police but disclaimed making some of the answers attributed to him. He denied participating in the robbery or murder. He said he had no agreement with Scott to commit a robbery and had no conversation with him in the cab about robbing the driver, but learned of it at the same time as everyone else when Scott drew the gun. He said he fled with the others and that Scott did not warn him to keep quiet when they met later at the tavern. Mabel Hines and Lolita Davis testified for the State. They said that Harris did not flee but stayed in the cab with Scott and came to the tavern with him.

Five days after Harris' conviction, the State moved to nolle prosequi the indictments against Hines and Davis because of their cooperation with the State. The motion was allowed. In this appeal Harris contends that he was prejudiced by the failure of the State to reveal its inten-

tion to nolle prosequi the indictments, by the court's refusal to suppress his confession and by the court's refusal to submit an instruction on his theory of the case.

The defendant went outside the record in showing what took place five days after the conclusion of his trial. The State suggested in its brief that a proceeding under the Post-Conviction Act would be the appropriate way for the defendant to advance his contention that the State knowingly permitted Hines and Davis to testify falsely that no promise had been made to them in exchange for their testimony. In his reply brief the defendant said he would adopt the suggestion and, at his request, oral argument in the present case was postponed pending the disposition of his post-conviction petition. Upon inquiry we learned that the petition was denied and we set this case for argument. The defendant then informed us that the denial of the petition is being appealed and he suggested further postponement until the appeal is decided. Inasmuch as the post-conviction proceeding had caused a delay of nineteen months in this court, we refused further postponement.

However, in deciding this appeal, we will consider the defendant's claim pertaining to the alleged false testimony only to the extent that it can be done within the present record. What took place after the trial was over will be left to the post-conviction proceeding. People v. Macias, 39 Ill2d 208, 234 NE2d 783 (1968); People v. Hoskins, 25 Ill2d 333, 185 NE2d 214 (1962).

The two witnesses testified that they were not promised leniency or immunity in exchange for their testimony. The State also denied making such a promise. In his closing argument, the prosecutor said:

"... Mabel Hines and Lolita Davis may walk out of this courtroom, they may walk out scott free, but

it is not because of any deal I made . . . or anybody in the State's Attorney's office [made] as far as any of us know here.

"They got on the stand because they were willing to testify and we felt it would be of some value for you to listen to them."

The defendant admits that there is no proof that the State promised the witnesses leniency or consideration. His speculation that there was a commitment, which if known to the jury might have affected the weight to be given the witnesses' testimony, is based almost entirely upon the dismissal of their indictments. This, as we have noted, is de hors the record.

■ In all the authorities cited by the defendant the prosecution either stated falsely that no promises had been made or permitted a witness to testify falsely that none had been made. See Napue v. Illinois, 360 US 264, 3 L Ed2d 1217, 79 S Ct 1173 (1959); People v. Coddington, 31 Ill2d 468, 202 NE2d 509 (1964); People v. McKinney, 31 Ill2d 246, 201 NE2d 431 (1964); People v. Lueck, 24 Ill2d 554, 182 NE2d 733 (1962). In the present case the prosecutor informed the jurors that the two witnesses (who had been released on their own recognizance prior to the trial) might go free. He was under no obligation to tell them more if there was in fact no understanding with them which might have influenced their testimony. Further, there is nothing to substantiate the defendant's speculation that the witnesses testified falsely when they said they were not promised immunity. If the State intended not to prosecute them— even if this intention were finalized before they testified—it would have had no bearing on their credibility if the intention was not communicated to them before they testified. We do not know what evidence was presented

at the post-conviction hearing, but in the record before us there is no evidence whatsoever that the testimony of the witnesses was false or that the State knowingly permitted perjured testimony to remain uncorrected.

The defendant next contends that his confession was the fruit of an illegal arrest and therefore should have been excluded. He relies on the following as authority: Wong Sun v. United States, 371 US 471, 9 L Ed2d 441, 83 S Ct 407 (1963); Traub' v. Connecticut, 374 US 493, 10 L Ed2d 1048, 83 S Ct 1899 (1963) and People v. DeLuca, 343 Ill 269, 175 NE 370 (1931). In DeLuca the court excluded an admission which grew out of an illegal search under the Fourth Amendment to the Constitution of the United States and under section 6 of Article II of the Constitution of Illinois; in Wong Sun and Traub the court excluded a declaration and a confession which were a product of an illegal arrest under the Fourth and Fourteenth Amendments of the Federal Constitution.

██ To exclude a confession under the Fourth and Fourteenth Amendments (and the similar provision of the Illinois Constitution) a defendant must make a motion to suppress evidence. The issue is whether the search or the arrest was illegal and the burden of proof is on the defendant. Ill Rev Stats 1963, c 38, § 114–12. But in the instant case, the defendant never made a motion under these amendments to suppress the evidence as the product of an illegal arrest.

The only motion made by the defendant was to suppress his confession. This motion was specifically brought under the Fifth and Fourteenth Amendments of the United States Constitution and section 10 of Article II of the Illinois Constitution. The motion challenged the confession on the ground that it was involuntary. It alleged that the defendant was illegally detained, refused the use of a telephone, and was deprived of counsel and the right to talk to his family. In addition to these allegations the

defendant testified at the hearing on the motion that he was beaten and threatened. The motion was denied.

The motion also alleged that he was arrested without a warrant and that the police officers did not have reasonable grounds for believing that he had committed a criminal offense. In addition to this, the motion's final all-inclusive "wherefore" clause urged the court to declare "unlawful the arrest . . . and [to suppress] all evidence . . . obtained as a result. . . ." The allegation and prayer lend semblance but not substance to the defendant's position that the motion was also one to suppress his confession as the product of an illegal arrest because the thrust of the motion and all the testimony under it were directed to suppressing the confession as involuntary. The trial court did not err in treating the motion as a Fifth Amendment motion to suppress the confession rather than a Fourth Amendment motion to suppress evidence.

 The burden of going forward with the evidence and the burden of proving that a confession is voluntary is on the State. Ill Rev Stats 1963, c 38, § 114–11. Because no evidence was adduced by the State in reference to his arrest, the defendant argues that his claim that the arrest was illegal remains unrebutted. This is true, but the illegality of an arrest is only a factor in determining the issue of voluntariness and does not of itself make the confession inadmissible. People v. Hudson, 38 Ill2d 616, 233 NE2d 403 (1968); People v. Miller, 13 Ill2d 84, 148 NE2d 455 (1958); People v. Klyczek, 307 Ill 150, 138 NE 275 (1923). Therefore, the State's failure to furnish proof as to the legality of the arrest did not require the court to rule that the confession was involuntary.

The defendant further contends that the testimony at the trial raised the issue of the illegality of his arrest. At the trial, Harris' mother testified that at the time of

his arrest the officers told her that he had been implicated by Clifton in the cabdriver's murder. The defendant now contends—for the first time—that the court, upon hearing this testimony, had a duty to inquire into the circumstances surrounding the arrest to ascertain whether it was legal.

The court had no such duty in this case. First, the defendant's failure to bring a motion under the Fourth Amendment to suppress his confession waived the issue. See People v. Gant, 84 Ill App2d 208, 228 NE2d 582 (1967); People v. Irish, 77 Ill App2d 67, 222 NE2d 114 (1966). Second, no new facts came to light at the trial which necessitated either further inquiry by the court or the setting aside of its previous ruling. Clifton was in custody and had been questioned by the police before they arrested Harris. It was a logical inference that they received information from him implicating Harris. Harris' mother revealed nothing that the court did not already know. See People v. Hudson, 38 Ill2d 616, 233 NE2d 403 (1968); People v. Holick, 337 Ill 333, 169 NE 169 (1929); People v. Rodriquez, 79 Ill App2d 26, 223 NE2d 414 (1967).

The Code of Criminal Procedure provides that a police officer may arrest a person without a warrant when he has reasonable grounds to believe that the person has committed an offense. Ill Rev Stats 1963, c 38, par 107–2(c). This condition prevailed in the present case. A cabdriver had been murdered. The police had a young man in custody who had been a passenger in the driver's cab shortly before he was killed. He gave them information which incriminated Harris. This information was not received from an anonymous informer; it was received from an ostensible accomplice who was present at the scene. The information was not about a stranger; it was about the accomplice's own relative. Harris' arrest was not made on a secret tip, rumor or vague suspicion;

314

it was made on definite information from a source that could reasonably be regarded as reliable. The police had cause to believe that Harris participated in the murder and had reasonable grounds to arrest him—indeed, they would have been negligent not to have done so. They were justified in proceeding without a warrant. Immediate action was advisable so that Harris would have no opportunity to flee if word reached him that his cousin was under arrest.

The final contention is that the court erred in refusing to instruct the jury on the defendant's theory of the case—that of being an innocent bystander. The refused instruction was as follows:

> "The Court instructs the jury that the mere presence of one at the time a crime has been committed or is being committed does not constitute him an accessory; that before you can find a man guilty of being an accessory to a crime, you must be satisfied beyond all reasonable doubt that he actively assisted in the commission of the crime by aiding, abetting or assisting in its commission, and unless these elements are proven beyond a reasonable doubt, it is your duty to return a verdict of not guilty as to the defendant."

The words "actively assisted in the commission of the crime" were misleading. While mere presence or negative acquiescence is not sufficient to make a person a principal to a crime, one may aid and abet without actively participating in the offense; circumstances may show that there was a common design to commit an offense and if this is so one may be guilty of the offense without actively assisting in its commission. Also, a person who is present when a crime takes place and does not oppose it may be guilty even though he is not an active participant. His presence and lack of opposition may be considered together with other facts and circum-

315

stances in determining whether he approved the crime and abetted its commission. People v. Bracken, 68 Ill App2d 466, 216 NE2d 176 (1966); People v. Valentine, 60 Ill App2d 339, 208 NE2d 595 (1965). The court correctly refused the tendered instruction.

The judgment is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.