THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID McCONNELL *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 62341

Opinion filed April 20, 1977.

James J. Doherty, Public Defender, of Chicago (James J. O'Regan and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

Mr . JUSTICE JIGANTI delivered the opinion of the court:

Defendants David McConnell and Debora Smith were convicted on two counts of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2) following a jury trial. Judgments were entered on the verdicts, and defendants were sentenced to terms of 10 to 20 years and 4 to 8 years respectively. On appeal, defendant McConnell contends that the motion to quash his arrest and suppress evidence and identification was improperly denied because the police lacked probable cause to stop the car in which he was riding, and that his concurrent sentences for the two counts of armed robbery were excessive. Debora Smith, in addition to arguing that the motion to quash the arrest and suppress evidence and identification as to her was improperly denied, contends that she was denied a fair trial because: (1) an improper statement of the law of accountability was permitted over objection and the accountability instruction was given to the jury without a sufficient basis to support it; (2) a wig was improperly introduced into evidence; (3) a prosecution witness' written statement which was read into evidence for purposes of rehabilitation after impeachment neither explained nor qualified the inconsistency and was prejudicial to Debora Smith. She also contends she was not proved guilty as a principal or proved accountable beyond a reasonable doubt.

On June 14, 1973, a young man and a young woman later identified as Debora Smith entered Mary's boutique, a cosmetics and wig salon. Present in the boutique at the time were Mary Sellers, the proprietor, Renee Sellers, her daughter, and Leanne Black, a customer. Debora Smith asked about a particular wig and whether there was a beauty salon on the premises. After being informed that there was no beauty salon but that the wig in which she was interested would be in stock Saturday, Debora Smith and her male companion left the store. Some five minutes later the pair returned, followed shortly thereafter by two other men, one of whom was identified as defendant McConnell. McConnell indicated he wanted to watch his "sister" try on some wigs. Renee gave Debora Smith a "gypsy style" wig from a display cabinet and assisted her in trying it on.

At this point McConnell drew a gun and ordered Mary Sellers, Renee Sellers and Leanne Black to the back of the store, where they were bound and relieved of their rings, watches and other jewelry. McConnell held the gun to Mary Sellers' head, demanding the keys to the soda machine and the day's receipts, and threatened to "blow her head off" if she did not comply. After ransacking the store and taking about 40 wigs, jewelry and money, all four left.

Twelve days later on June 26, 1973, two Chicago police officers, Louis Lara and James Sperekas, were on patrol in an unmarked vehicle when they received a simulcast regarding a man with a gun in the vicinity of 1900 South Springfield, within several blocks of their position. A second broadcast indicated that a late model blue Cadillac was involved and was heading south on Springfield Avenue. The officers observed a Cadillac without license plates proceeding southbound on Hamlin Avenue, approximately four blocks from the scene indicated by the radio bulletin. The policemen signaled the vehicle to a halt. Both officers testified that the vehicle they stopped was green with a white top, but that it looked blue. However, defendant McConnell testified that the car was blue. Defendants McConnell and Debora Smith were in the back seat. Anthony Smith was the driver and Gloria Smith was seated next to him in the front seat. As Officer Sperekas approached the car, he observed that Anthony Smith had a gun in his hand which he passed to Gloria Smith. Gloria Smith placed the gun in her purse. Officer Sperekas warned Officer Lara who was approaching the car on the passenger side that the occupants had guns. The policemen drew their weapons and ordered the four out of the car. Two guns were found in Gloria Smith's purse. Defendant Debora Smith left her purse on the back seat as she exited the car, and two guns were found inside it. Both Debora Smith and David McConnell were then arrested. Defendants were identified from videotapes of lineups by Mary Sellers and Leanne Black as one of the gunmen and the woman present in the boutique at the time of the robbery. They were also identified from color photographs by Renee Sellers.

Prior to trial, defendants moved to quash their arrests and suppress evidence and all subsequent identifications. Defendants maintain that the "vague radio simulcast of 'man with a gun' in a blue Cadillac" was insufficient to justify the stopping of the vehicle in which they were riding, and that all fruits of that stop should have been suppressed. They assert that since no traffic citation was issued although the vehicle had no license plates, the central focus of the stop was to investigate the gun complaint. Defendants contend that the officers had, at most, a suspicion regarding the Cadillac in which the defendants were riding, and no justification for searching and arresting the defendants.

■■ ■ Officers Lara and Sperekas had just received police radio

bulletins stating that there was a man with a gun in their vicinity, and that a late model blue Cadillac in which he was apparently fleeing was heading in their direction. Moments later they observed a vehicle matching that description some four blocks from the initial sighting. We think the police officers could reasonably infer that the vehicle in which defendants were riding was the subject of the police radio simulcasts. The police officers' action in stopping the car was justified pursuant to section 107—14 of the Illinois Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 107—14). Moreover, the fact that the automobile was being driven without license plates in itself would have justified the stop.

■■ Once the vehicle had been stopped and the policemen were approaching it to investigate, one of the officers actually saw a gun being passed from the driver to the woman next to him. To suggest that the officers were without authority to approach the vehicle and the persons in it to investigate possible criminal behavior is unacceptable. Illinois courts have held that:

> " * * * if circumstances reasonably indicate that the police may be dealing, not with an ordinary traffic violator, but with a criminal, then a search of the driver and his vehicle is authorized in order to insure the safety of the police officers and to prevent an escape." (*People v. Brown* (1967), 38 Ill. 2d 353, 355, 231 N.E.2d 577; *People v. Tilden* (1974), 26 Ill. App. 3d 447, 452, 325 N.E.2d 431.)

Under such circumstances, the right to search for the purpose of protecting the arresting officers from attack has been extended to passengers in the car. *People v. Gilyard* (1970), 124 Ill. App. 2d 95, 102, 260 N.E.2d 364.

■■ In the instant case, the police officers were confronted with a situation in which they had received simulcasts describing a "man with a gun" in their vicinity and his apparent entry into a late model blue Cadillac. The car they stopped was variously described as a green or blue Cadillac, was without license plates, and had four passengers, two men and two women. The circumstances gave the appearance of criminal activity and justified a suspicion that this was something more than an ordinary traffic stop. Once the police officers had actually seen a gun being passed from one person to another within the car, they had a duty to investigate further and would certainly have been risking grave danger had they not.

However, defendants contend that once the two guns had been found in the purse of Gloria Smith in the front seat to whom the police had seen the driver pass a gun, there was no probable cause to either search further or arrest defendants. Without a reasonable belief that a search of the particular place or thing would yield evidence, fruits of a crime, or was

necessary for the protection of the officers (*People v. Symmonds* (1974), 18 Ill. App. 3d 587, 593, 310 N.E.2d 208), there would be no probable cause to support the subsequent search of the purse Debora Smith left in the back seat of the car nor to support the arrests of both defendants Debora Smith and McConnell. We believe that the totality of the facts and circumstances present in this case justified the actions of the police.

The officers had seen a gun in the car, and had in fact recovered two guns from the purse of one of the women in the car. They were looking for a "man with a gun" but had no physical description. Despite the fact that the male driver had been seen passing a gun, there was still a good possibility that the man in the back seat could be the "man with the gun." Having collected two guns from the presence of the two persons in the front seat, it would be foolhardy for the police to allow the two persons in the back seat to retrieve Debora Smith's purse and go free without investigating further. The United States Supreme Court in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, concluded:

" * * * there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." 392 U.S. 1, 27, 20 L. Ed. 889, 909, 88 S. Ct. 1868.

Based on their experiences, the police officers could reasonably have inferred here that there was a possibility of the presence of further weapons, and that they might be in danger. Having found those additional weapons, they were under no duty to decide on the spot whether or not the two guns found in Debora Smith's purse belonged solely to her or not. In light of the fact that the officers had no description of the man with the gun, that they had seen the male in the front seat pass a gun to his female companion and subsequently two guns were found in her purse, that they had now found two guns in the purse of the woman in the back seat, and that three of the four persons in the automobile had either been seen handling a weapon or found with weapons in their possession, we find it reasonable for the officers to believe that defendant McConnell was involved with the others in some violation of the law. We find that there was sufficient probable cause to support the arrest and search of both defendants. See *People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448.

■■ Defendant McConnell also contends that the concurrent sentences of 10 to 20 years on the conviction of two counts of armed robbery were

excessive. At the sentencing hearing, the judge asked the prosecutor: "I believe there were three counts in this indictment, is that correct?" The answer was affirmative, and the judge was asked to "sentence them on that verdict." It is unclear from the record whether the trial court based its decision to sentence defendant McConnell to not less than 10 years and not more than 20 years on each count on the fact that he had been mistakenly informed that defendant had been found guilty of three counts of armed robbery, instead of two. In light of this uncertainty, we remand this issue to the trial court for further consideration and clarification.

Debora Smith separately contends that she was not proved guilty of armed robbery either as a principal or as accountable beyond a reasonable doubt, and that there was insufficient evidence to give the accountability instruction to the jury. A person is legally accountable for the conduct of another when:

> "(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. * * *." (Ill. Rev. Stat. 1973, ch. 38, par. 5—2(c).)

In order to come within the purview of the statute it must be established that: (1) the defendant solicited, ordered, abetted, agreed or attempted to aid others in the planning or commission of the offense; (2) that such participation took place before or during the commission of the offense; and (3) that such participation was with the concurrent, specific intent to promote or facilitate the offense. (*People v. Ramirez* (1968), 93 Ill. App. 2d 404, 410, 236 N.E.2d 284.) While mere presence of the defendant at the scene of the crime or negative acquiescence is not sufficient to make a person a principal to a crime (*People v. Bowman* (1971), 132 Ill. App. 2d 744, 747, 270 N.E.2d 285; *People v. Washington* (1970), 121 Ill. App. 2d 174, 181, 257 N.E.2d 190), one may aid and abet without actively participating in the offense (*Bowman,* at 747; *People v. Harris* (1969), 105 Ill. App. 2d 305, 315, 245 N.E.2d 80).

■■ If the evidence shows that defendant was present at the crime without disapproving or opposing it, the trier of fact may consider that conduct in connection with other circumstances and thereby conclude that such person assented to the commission of the criminal act, lent his countenance and approval, and thereby aided and abetted the crime. (*People v. Richardson* (1965), 32 Ill. 2d 472, 477, 207 N.E.2d 478; *People v. Gilliam* (1974), 16 Ill. App. 3d 659, 662, 306 N.E.2d 352.) In the case at bar, there was uncontradicted testimony that Debora Smith entered the boutique with a male and inquired about wigs and the extent of the facilities. They left, only to return a short time later followed closely by

two other men, one of whom was McConnell. McConnell referred to Debora Smith as his "sister," indicating he wanted to watch her try on some wigs. Such testimony thus tied her to two of the three men involved in the robbery. Mary Sellers, her daughter Renee and Leanne Black were all bound and held at gunpoint; Debora Smith was not. She was no longer in the store when the victims freed themselves. She was discovered in the company of defendant McConnell 12 days after the robbery. She was later identified from a videotape lineup actually wearing a wig which closely resembled the one being tried on by defendant at the time of the robbery and stolen from Mary's Boutique. While Debora was never seen with a gun or taking anything from the store, the circumstances surrounding the commission of the crime in their entirety support defendant's conviction on a theory of accountability. Since we have found that there was sufficient evidence to warrant a finding that defendant Smith could be held accountable for the actions of the others, there was sufficient evidence to support the giving of the accountability instruction. *People v. Johnson* (1975), 32 Ill. App. 3d 685, 689, 336 N.E.2d 284.

■■ Debora Smith next contends that the trial court improperly permitted the State to introduce a wig into evidence without establishing a sufficient nexus between the wig and the defendant. Defendant argues that since there was no testimony from either of the arresting officers that defendant Smith was wearing a "gypsy-style" wig or had it in her possession at the time of her arrest, the wig was not connected with her and therefore not admissible. Defendant cites *People v. Jones* (1961), 22 Ill. 2d 592, 177 N.E.2d 112, and *People v. Reddock* (1973), 13 Ill. App. 3d 296, 300 N.E.2d 31, in support of her position that evidence must be linked with both the crime and the defendant to be admissible. However, in *Jones*, the court noted that admissibility does not turn solely upon the question of possession in any technical sense, but should be considered as a question of relevance. (*Jones*, at 599.) In *Reddock*, the only possible connection between defendant and a hatchet found at the murder scene was that the hatchet might have been purchased in McHenry, Illinois, where the decedent had last been seen alive in the company of a man later identified as the defendant. The court found that such evidence was insufficient to link defendant to the hatchet and therefore it should not have been admitted.

However, in the present case, defendant was identified as being in possession of the wig at the time of the robbery. She was subsequently in actual physical possession of the wig during the videotaping of the lineup from which she was identified as the woman in the store at the time of the robbery. A police officer then seized the wig from defendant's head subsequent to the identification. We find the testimony sufficient to show a

connection between the wig and defendant Smith, and its admission into evidence was not error. See *People v. Woods* (1976), 41 Ill. App. 3d 29, 353 N.E.2d 304.

Defendant Smith next contends that the State misstated the law of accountability in closing argument thereby confusing the jury to the prejudice of the defendant. Specifically defendant points to statements by the State's Attorney that:

> " * * * as Mr. Smith [defense counsel] concedes to you when he says * * * there is only one issue in this case, that is identity, whether or not this woman and this man were the ones who were in that store on that date. * * * as a matter of law, if you find the facts to be that she is present then she is guilty of armed robbery. She is responsible for and accountable for the conduct of her cohorts, her co-conspirators, he admitted that when he said the only issue before you is identity."

Defense counsel had in fact keyed his argument to the question of identification, stating that the guilt or innocence of Debora Smith "hangs on a wig." In the context of defense counsel's statements at trial, the argument made by the State was not improper or unreasonable.

■■ Finally, defendant Smith contends that the admission into evidence of Leanne Black's written statement for the purpose of rehabilitating her credibility was error where the statement neither explained nor qualified the inconsistencies in her testimony. On cross-examination, a defense attorney had questioned Black regarding statements she had testified to on direct examination which were not contained in the written statement she had prepared for the police immediately after the robbery. On rebuttal, the State was allowed to introduce the entire statement which consisted of 16 sentences and only one page of the transcript to demonstrate that the omissions pointed out by defense counsel were due to the purpose and brevity of the statement. The parties agree that the Illinois rule regarding rehabilitation of a witness provides:

> "Prior out-of-court statements consistent with direct testimony cannot be used to rehabilitate the direct testimony even after impeachment on cross-examination. [Citations.] However, to avoid unfairness it is permissible to explain or qualify the impeaching statement from the same document by showing that the impeaching statement was taken out of context or so isolated as to be misleading. [Citations.]" *Kenilworth Insurance Co. v. McDougal* (1974), 20 Ill. App. 3d 615, 621, 313 N.E.2d 673.

However, Debora Smith claims that some of the statements neither qualified nor explained the inconsistencies in Black's testimony and prejudiced her since the use of the word "they" implied that Debora

Smith was actively participating in the robbery. In the context of the attempted impeachment of Mrs. Black, we find the admission of the written statement proper. Without admitting the entire statement, the jury could have concluded that the written statement reflected an extensive summary of Mrs. Black's recollections about the incident, seriously impugning the accuracy of her identification of defendant McConnell. The possibility of prejudice resulting from the use of the word "they" is too remote to warrant a finding of error.

For the foregoing reasons, the judgments against defendants McConnell and Smith are affirmed. The sentence of defendant David McConnell is reversed and that cause remanded for resentencing.

Affirmed in part, reversed in part and remanded for resentencing.

SIMON, P. J., and McGILLICUDDY, J., concur.