THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY A. CLEVELAND *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 83—1605, 83—1631 cons.

Opinion filed January 21, 1986.

James J. Doherty, Public Defender, of Chicago (Thomas W. Murphy, Assistant Public Defender, of counsel), for appellant Jeffrey A. Cleveland.

Steven Clark and Donna Finch, both of State Appellate Defender's Office, of Chicago, for appellant Pamela Smith.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Richard A. Stevens, and Maureen O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:
This is a consolidated appeal of the convictions of defendants Pamela Smith and Jeffrey Cleveland for voluntary manslaughter (Ill. Rev. Stat. 1983, ch. 38, par. 9—2). Defendants were each charged by information with the offenses of murder and armed violence (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1, 33A—2, respectively) in connection with the death of Mathias Wilson. The trial court granted Cleveland's motion for severance on the ground that the written statement of each defendant implicated the other. Cleveland waived his right to a jury trial, and was tried in a bench trial, conducted simultaneously with Smith's jury trial. At the conclusion of the joint proceedings, the trial court found Cleveland guilty of the lesser in-

cluded offense of voluntary manslaughter, predicated upon the theory of accountability (Ill. Rev. Stat. 1983, ch. 38, par. 5—2), and the jury found Smith guilty of voluntary manslaughter. Judgments were entered on the verdicts and Cleveland and Smith were sentenced to terms of four years and six years, respectively, in the Illinois Department of Corrections.

On appeal, Cleveland contends that: (1) he was not proven guilty beyond a reasonable doubt of voluntary manslaughter under the theory of accountability; (2) he was deprived of his right to a fair trial when the trial court departed from its function as the impartial trier of fact and assumed the role of arbitrator; and (3) the trial court erred in excluding evidence regarding the victim's aggressive participation in prior altercations. In a separate brief, Smith contends that the trial court erred when it reversed its ruling regarding the submission of photographs of the deceased victim's wounds to the jury. For the reasons that follow, we affirm the judgments of the trial court.

The record reveals the following facts pertinent to this consolidated appeal. It is undisputed that in the early morning hours of July 31, 1982, in the vicinity of Polk Street and Homan Avenue in Chicago, Cleveland struck Mathias Wilson with a board and Smith repeatedly stabbed Wilson with a butcher knife. Wilson died later that morning from the stab wounds.

George Walker testified as to the events leading up to the stabbing. Approximately 11:45 p.m. on July 30, 1982, Leon Morgan, his wife Janis, Stacy Irons, Wilson and Walker were sitting on the front steps of Morgan's apartment building, drinking beer and talking, when Smith's mother approached the group, exchanged a few words with Wilson and walked away. Approximately five minutes later, Smith and Cleveland, both of whom lived nearby, walked over to the group. Smith was carrying a purse and Cleveland was carrying a bat. Smith told Wilson that if she had anything to say to her, to say it directly to her and not to her mother. She then pulled a butcher knife out of her purse and began swinging it at Wilson. Wilson backed into the hallway of the apartment building and re-emerged, carrying a sledgehammer. While Smith was swinging the knife at Wilson, she cut Irons on the knee. Wilson raised the sledgehammer and walked toward Smith, who began to back away. Meanwhile, Cleveland walked toward Wilson with the bat raised. In an effort to keep Cleveland out of the fight, Walker took a tire iron out of his trunk and warned Cleveland to stay out of the fight, which he did. Wilson and Smith exchanged a few more words and then Cleveland

and Smith walked away.

After Cleveland and Smith left, Morgan, Irons, Wilson and Walker drove to a nearby phone booth to report to the police that Irons had been cut by Smith. They then drove back to Morgan's building and waited for the police. After waiting 20 minutes, Irons, Wilson and Walker drove back to the phone booth, stopping *en route* for a six-pack of beer. After making the second call, they drove past Smith's residence and saw Cleveland, Smith, Smith's mother and several other people on the street. Walker had the tire iron and sledgehammer on the front seat of his car between himself and Wilson who was sitting in the front passenger seat. Irons was sitting in the back seat. As they were driving by the group, Wilson threw a brick out of the car window and Cleveland threw a brick at Walker's car.

When the brick hit his car, Walker stopped the car, grabbed the tire iron and walked toward the group. Wilson also got out of the car, but Irons remained in the back seat. Cleveland still had a board in his hand and Smith had her purse. Mrs. Smith walked over toward Walker and asked him to come into her house to talk with her son on the telephone. When Walker came out of the house a few minutes later, he saw Smith coming toward him. Her arm was bleeding. He noticed a crowd standing in the street and saw Wilson lying on the ground, bleeding. Walker ran to his car; drove it to where Wilson was lying; and he and Irons put her in the car and drove her to Cook County Hospital, where she died a short time later.

Stacy Irons testified to substantially the same events. Irons further stated that the relationship between Smith and Wilson was not good because of an incident a few months earlier when Smith had hit Wilson on the head with her shoe following an argument. With respect to the night in question, Irons stated that after Walker went into Mrs. Smith's house, Cleveland charged toward Wilson with a raised board. Wilson grabbed the sledgehammer and both Wilson and Cleveland swung at each other simultaneously Cleveland hit Wilson on the arm, causing her to fall to the ground and to drop the sledgehammer. When Wilson stood up and started to run away, Irons saw Smith "fly past" with a butcher knife in her hand, chasing after Wilson along with Cleveland. Wilson tripped and fell, and Cleveland began hitting her with the board while Smith was stabbing her. Wilson managed to stand up again and run for about two feet, but fell when Cleveland hit her on the head with the board. Smith continued to stab her. At that point, Irons threw a beer in

Cleveland's face and grabbed the board from him. Wilson was lying on her back and Smith kept stabbing her until someone pulled her off of Wilson. Irons did not see what happened to the butcher knife, board or sledgehammer. After Wilson fell to the ground and dropped the sledgehammer, she had no other weapon.

On examination by the court, Irons stated that neither he nor Cleveland did anything to stop Smith from stabbing Wilson. Further, Irons did not notice who it was that eventually pulled Smith off of Wilson.

On cross-examination by Cleveland's counsel, Irons stated that when someone pulled Smith off of Wilson, the only other people close by were Cleveland and Smith's mother. Irons thought that the person who had removed Smith was a male.

Assistant State's Attorney Al Petrocelli testified that approximately 10:30 a.m. on July 31, 1982, Smith gave him a written statement at area headquarters. According to Smith's statement, Walker exited his car with two others near Smith's house, threw bricks at Smith and threatened to kill her. Cleveland and Smith, armed with bats, then approached Wilson who had a sledgehammer. Cleveland hit Wilson with the bat and she fell down. Smith then swung and hit her, and Wilson pulled a knife out of her back pocket and cut Smith. Someone in the crowd handed Smith a knife and she began stabbing Wilson. Wilson then ran across the street with Smith chasing after her. When Wilson fell down, Smith continued to stab her until someone grabbed Smith and told her to get up. At the time, Cleveland was several feet away in front of Smith's house.

Dr. An, pathologist for the Cook County coroner's office, testified that he performed an autopsy on Wilson on July 31, 1982, and discovered stab wounds in the left pubic area, just below the left pubic area, left side of the thigh, inside of the left thigh, left upper back, left buttocks and back of the left thigh. In addition, there was a cutting wound on the left big toe and a laceration on the right back of the head. According to Dr. An, the cause of death was the stab wounds to both thighs, which lacerated the femoral blood vessels.

After the State rested its case, the defense objected to allowing the jury to see the photographs of Wilson's wounds on the ground that they were not probative and would only serve to inflame the jury. In response, the State argued that because Smith is alleging self-defense, the location and number of wounds is highly probative. The court stated that it would reserve its ruling until after the defense rested its case. Thereafter, Smith moved for acquittal and

Cleveland moved for a directed finding of not guilty as to all charges. The court denied both motions.

Jeffrey Cleveland next testified in his own behalf. Prior to July 31, 1982, Cleveland had seen Wilson involved in two fights, one of which was the altercation in which Smith had hit Wilson on the head with her shoe. Regarding the evening of July 30, 1982, Cleveland stated that he had armed himself with a stick before he and Smith walked over to Morgan's apartment in order to protect himself. At the apartment, he saw Smith pull a knife out of her purse and start swinging at Wilson while the two women were talking. After returning home, Cleveland and several others were standing in the street when they saw Walker's car approaching. Before the car reached the group, someone got out of the car near a vacant lot which had a lot of bricks. Then, as the car drove by the group, Wilson began throwing bricks out of the window. Members of the group threw bricks back at the car. Cleveland denied that he had thrown any bricks.

After Walker went into Smith's house with Mrs. Smith, Wilson continued to throw bricks and shouted to Smith that she had been responsible for a previous beating which Smith had received from a group of boys. When Cleveland heard Wilson's statement, he ran up to her, armed with a stick, and told her to go home. Wilson then swung at Cleveland with a sledgehammer and hit him on the left side of the head, causing a gash. Cleveland then grabbed Wilson by the shoulder and pulled her to the ground. When she got up and started to run away, Cleveland chased her, caught her and hit her on the arm and leg several times with a stick. Smith came up behind him and started stabbing Wilson. Cleveland then turned around and walked back toward Smith's house. As he was walking back, Irons threw a beer in his face and took the stick away. At that point, Cleveland walked back to Smith, pulled her off of Wilson and walked with her back toward the house. Cleveland claimed that he had observed only the last stab because his back had been turned. On cross-examination, Cleveland stated that he did not see Wilson with a knife. During the court's examination, Cleveland was queried as to where he had been hit by Wilson, shown the photograph taken of him immediately after the incident which showed no wound, and asked about ambiguities between his testimony and his written statement. Cleveland then rested his case.

Next, Ricky King testified as an eyewitness in behalf of Smith and stated that Walker's car had not been hit by any rocks or bricks. When the car stopped, Walker, armed with a tire iron, and

Wilson, armed with a sledgehammer and a stick, got out of the car. Wilson then started throwing bricks at Smith and calling her names. When Cleveland and Wilson began fighting, Smith attempted to separate them and, in doing so, fell back against Walker's car. Wilson then took a knife out of her back pocket and started swinging at Smith. Someone in the crowd gave Smith a knife and Smith and Wilson began "tusseling" with each other. King did not see Smith stab or cut Wilson. On cross-examination, King stated that Wilson had never hit Cleveland with a sledgehammer.

Next, Pamela Smith testified in her own behalf, stating that she had had a previous fight with Wilson approximately two weeks before the incident and had hit Wilson on the head with her shoe. Further, on the night of the incident, Smith learned that Wilson had been responsible for sending five boys to jump Smith and her brother and beat them with sticks.

With respect to the events leading up to the stabbing, Smith stated that Walker stopped his car near Smith's house and got out, holding a tire iron. Smith's mother convinced Walker to go into her house to talk with her son. While he was gone, Wilson, holding a sledgehammer, got out of the car. Cleveland, armed with a stick, walked toward Wilson. When Smith saw Cleveland and Wilson swing and hit each other with their weapons, she ran over to them to push them apart. Wilson fell and took a knife out of her back pocket and began to swing at Smith, cutting her on the hand. Someone from the crowd then handed Smith a knife, and she started swinging at Wilson while they were "tusseling" with each other face-to-face. On cross-examination, Smith denied going to Morgan's apartment earlier that evening and swinging a knife at Wilson.

Following the conclusion of Smith's case, the court ruled that certain photographs of Wilson's wounds would be admitted to the jury to show each section of the body which had been stabbed. Smith then moved for a directed finding of not guilty on the murder charge only, arguing that she had acted in self-defense and under extreme provocation. The court denied the motion and, subsequently, found Cleveland guilty of voluntary manslaughter, predicated upon the theory of legal accountability. The jury returned its verdict, finding Smith guilty of voluntary manslaughter. Thereafter, defendants' individual motions for a new trial were denied and the court sentenced Cleveland and Smith to terms of four years and six years, respectively. Defendants' separate appeals followed.

■ Defendant Cleveland first contends that he was not proven guilty beyond a reasonable doubt of voluntary manslaughter under

the theory of accountability. Cleveland argues that because he never took any positive action to knowingly aid and abet Smith, his mere presence at the scene could not render him legally accountable.

For purposes of review, a trial court's conclusion that a defendant is legally accountable for the unlawful conduct of another person will not be set aside unless the evidence is so improbable, unsatisfactory or unreasonable that a reasonable doubt of defendant's guilt exists. (*People v. Ruckholdt* (1984), 122 Ill. App. 3d 7, 460 N.E.2d 847.) Pursuant to section 5—2(c) of the Criminal Code of 1961, a person is legally accountable for the conduct of another when:

"(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1983, ch. 38, par. 5—2(c).

It is well established that mere presence at the scene of the crime or negative acquiescence to another's actions is ordinarily insufficient to establish accountability. However, one may aid or abet without actively participating in the offense. (*People v. Young* (1983), 116 Ill. App. 3d 984, 452 N.E.2d 718.) If the evidence shows that defendant was present at the crime without disapproving or opposing it, the trier of fact may consider that conduct in connection with other circumstances and conclude that defendant assented to the commission of the criminal act, lent his countenance and approval and thereby aided and abetted the crime. (*People v. McConnell* (1977), 48 Ill. App. 3d 355, 362 N.E.2d 1280.) Further, where one joins the actions of others who are contemplating or preparing to perform illegal acts which by their nature are dangerous or homicidal in character, or which will likely require the use of force that could result in the unlawful taking of life, he becomes criminally liable for any wrongdoings committed by the others in furtherance of the common purpose or which are a natural consequence of the others' behavior. *People v. Hughes* (1962), 26 Ill. 2d 114, 119-20, 185 N.E.2d 834.

In the instant case, defendant Cleveland argues that the evidence at trial failed to establish that: (1) he acted in concert with defendant Smith; (2) he took any positive action to knowingly aid or abet Smith; or (3) he intended to assist in committing the crime. We disagree. It is undisputed that Cleveland, armed with a large bat or board, chased Wilson as she attempted to flee the scene and that he struck her repeatedly after she had fallen to the ground. While Wilson was lying on the ground as the result of Cleveland's beating,

Smith began stabbing her. Cleveland did nothing to stop it. In our judgment, the evidence shows that Cleveland acted in an aggressive and demanding manner which served to escalate the confrontation and precipitate the stabbing. Further, Cleveland made no attempt to dissuade Smith from stabbing Wilson, to aid Wilson, or to notify the police. Although Cleveland claims that it was he who eventually pulled Smith off of Wilson, there is no corroborating testimony to this alleged action. Accordingly, we conclude that the court's determination that Cleveland was legally accountable for the murder of Wilson was supported by the evidence beyond a reasonable doubt.

■ Defendant Cleveland next argues that he was deprived of his right to a fair trial when the trial court departed from its proper function as the impartial trier of fact and assumed the role of arbitrator in the examination of defendant Cleveland and State's witnesses, George Walker and Stacy Irons.

Generally, the trial court has the right to question witnesses in order to elicit the truth, to resolve ambiguities, or to clarify relevant testimony. (*People v. Delk* (1981), 96 Ill. App. 3d 891, 900, 421 N.E.2d 1341.) The propriety of the court's examination is determined by the facts of each case and is principally a discretionary decision by the trial court. This is especially true where the defendant is being tried without a jury, thereby lessening the danger of any prejudice. *People v. Costello* (1981), 95 Ill. App. 3d 680, 421 N.E.2d 1341.

■ In the instant case, we have examined all of the questions asked by the trial court and conclude that they did not exceed the bounds of propriety. Defendant contends that the trial court's examination of him forced him to attempt to defend himself and to explain matters which were questioned. We fail to see how this prejudiced defendant. Specifically, the court inquired into: (1) the scene of the crime with respect to distance and location of the various individuals; (2) Cleveland's awareness of Smith's proximity while he was chasing Wilson with the stick; (3) whether Cleveland had actually been hit by Wilson and where he was hit; and (4) the apparent ambiguities between his testimony at trial and his prior written statement taken immediately after the incident.

Citing *People v. Moriarity* (1966), 33 Ill. 2d 606, 213 N.E.2d 516, *People v. Stephens* (1973), 12 Ill. App. 3d 215, 297 N.E.2d 224, and *People v. Cofield* (1973), 9 Ill. App. 3d 1048, 293 N.E.2d 692, defendant alleges that the trial court's questions were used to discredit defendant's testimony and, as such, were erroneous and "best left to the prosecution." We find *Moriarity, Stephens* and *Cofield*

readily distinguishable from the case at bar. First, both *Moriarity* and *Stephens* involved a jury trial where the possibility of prejudice to a defendant by a court's questions is greatly increased. Cleveland was not tried before a jury. Thus, the danger of prejudice in the eyes of the jury was not present. With respect to *Cofield,* the trial judge called nearly all of the State's witnesses himself, conducted extensive examinations of these witnesses, and intimidated the 13-year old victim by threatening to send her to the Audy Home. In the present case, the witnesses were already on the stand when questioned by the court, the questions were brief, and there is no evidence of intimidation.

Defendant fails to discuss the court's questioning of State's witnesses Walker and Irons except to allege that the court had questioned them extensively. However, the record indicates that the court did not question either of the witnesses extensively. Rather, the court merely asked Walker whether he had had anything to drink prior to the incident, clarified the sequence of events, questioned why Walker and his friends had not driven to the nearby police station instead of calling the police, and asked why Walker had had the tire iron on the front seat of his car. With respect to Irons, the court attempted to clarify where Irons was standing during the stabbing, whether he actually saw the stabbing and what his actions were during the stabbing. In our judgment, such interrogation is not improper. The court's questions did not indicate bias, prejudice or hostility against defendant. Instead, the questions merely sought to clarify details of the incident and to resolve ambiguities. Thus, we hold that the court's questions did not deprive defendant of his right to a fair and impartial trial.

■ Defendant next argues that the trial court erred in refusing to allow him to testify as to the prior fights in which Wilson was involved and whether Wilson had possessed a weapon during those fights. Defendant contends that such testimony was admissible to show Wilson's aggressive character which is relevant to the allegation of self-defense.

Under Illinois law, inquiry into a victim's propensity for violent aggression is permitted where there is a plea for self-defense. (*People v. Baer* (1976), 35 Ill. App. 3d 391, 342 N.E.2d 177.) Further, specific prior incidents of violent aggression by a victim may be admissible as tending to show that he was the aggressor in the incident at bar. *People v. Buchanan* (1980), 91 Ill. App. 3d 13, 414 N.E.2d 262.

■ In the instant case, we find there was ample evidence pre-

sented as to the bad relationship between Wilson and Smith and as to Wilson's aggressive character. Irons, Smith and Cleveland all testified as to previous altercations between Smith and Wilson, as well as to an incident which Wilson had allegedly arranged wherein several boys beat up Smith and her brother. The only testimony that was not permitted by the court was with respect to whether Smith had had a weapon during a previous altercation which did not involve either Smith or Cleveland. Even if we were to find that testimony as to whether Wilson had had a weapon during a previous altercation should have been admitted, we would find the error to be harmless beyond a reasonable doubt because the court had previously submitted substantial evidence concerning Wilson's propensity to violent behavior. *People v. Gossett* (1983), 115 Ill. App. 3d 655, 451 N.E.2d 280.

■ Defendant Smith's sole contention on appeal is that the trial court committed reversible error when it allowed photographs of Wilson's stab wounds to be viewed by the jury. Smith argues that since she admitted to stabbing Wilson, the photographs were not probative of any issue.

It is well established that the admission of photographs is a matter within the sound discretion of the court. (*People v. Holloway* (1983), 119 Ill. App. 3d 1014, 457 N.E.2d 466.) The fact that they are gruesome or inflammatory in nature is no bar to their admissibility provided they are probative of one or more issues in a homicide investigation (*People v. Minnis* (1983), 118 Ill. App. 3d 345, 455 N.E.2d 209), depict the amount of force used in the crime, or tend to corroborate or dispute the testimony of the pathologist or other witnesses. *People v. Holloway* (1983), 119 Ill. App. 3d 1014, 457 N.E.2d 466.

■ In the present case, the photographs showed the position and depth of the various stab wounds. In our view, they were probative of Smith's description of the "tussel" with Wilson and her claim of self defense. Further, the photographs corroborated and clarified Dr. An's testimony as to the position of the inflicted wounds. Therefore, we find that the trial court properly admitted the photographs into evidence and allowed the jury to view them.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY, P.J. and O'CONNOR, J., concur.