THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD FUSCO, Defendant-Appellant.

Fourth District   No. 4—92—0678

Argued April 14, 1993.—Opinion filed June 3, 1993.

Daniel D. Yuhas and Gary R. Peterson (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Scott H. Walden, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and James Majors (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On January 2, 1992, a five-count information was filed in the circuit court of Adams County against defendant Donald Fusco. The first four counts charged him with the first degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)) of Marc Crawford on or about December 27, 1991. The fifth count charged him with the robbery (Ill. Rev. Stat. 1991, ch. 38, par. 18—1(a)) of Crawford on or about that date. At the conclusion of a jury trial on June 26, 1992, judgment was entered on a verdict finding defendant guilty of first degree murder and robbery. On July 31, 1992, the court sentenced defendant to concurrent terms of 60 years' imprisonment for first degree murder and 7 years for robbery. Defendant appeals.

On appeal, defendant maintains the court erred in submitting various instructions to the jury which concerned his guilt of murder on a theory of his accountability for the conduct of Randy Schlueter. Defendant makes no contention that the evidence was not sufficient to support his guilt of murder as a principal but asserts that no evidence supports a finding that he was guilty under a theory of accountability. Most of the evidence at trial consisted of the testimony of Schlueter and defendant, each of whom was admittedly present when Crawford was killed, each stating that the other performed every act which brought about Crawford's death.

The evidence was undisputed as to certain events which occurred in the evening of December 26, 1991, and the early morning hours of December 27, 1991. That month defendant returned to Quincy, his hometown, from Las Vegas, Nevada, where he had been living for the previous six months. On December 26, defendant called Schlueter, a friend he had known for several years, to pick him up at the Diamond Motel, where he was staying. Defendant was then 19 years old and Schlueter was 22. They spent the evening at the Forum nightclub in Quincy until it closed at 2:30 a.m. on December 27. They left the Forum on foot and, as they were walking, a car driven by Crawford pulled over, and Crawford asked them if they would like a ride. Both the defendant and Schlueter got in the car, although it was disputed who got in front with the victim. Crawford drove to a store where Schlueter purchased a six-pack of Michelob Light beer and then drove to a deserted area near a boat ramp by the Quincy dam.

Schlueter testified that after he and defendant got out of the automobile at the dam: (1) defendant leaned over to him and said "Schlu, let's roll this dude"; (2) Schlueter made no response; (3) Crawford then got out of the vehicle and walked up to where they were standing; (4) defendant then reached into his pocket, took out gloves which he put on and leaned over and whispered to Schlueter, "let's stick this guy" or "let's roll this dude"; (5) Schlueter again made no response; (6) defendant then attacked Crawford with his fists and kicked him while he was on the ground; (7) defendant approached Schlueter and said, "Schlu we got to kill this dude"; (8) Crawford was then on his hands and knees crawling to the river, and defendant threw a rock on top of Crawford, hitting him in the back; and (9) defendant then said that Crawford was not dead yet and they had to kill him.

Schlueter's testimony indicated that to the point of defendant's telling him Crawford was not dead yet, Schlueter merely stood and watched or shouted something he could not remember. Schlueter tes-

tified that when defendant stated Crawford was not dead and that they should kill him, he (Schlueter) told defendant, "let's just leave." However, according to Schlueter, defendant then tried to cut Crawford's neck with a bottle defendant had broken on Crawford's head. Schlueter maintained he then went down to the river and tried to get defendant off Crawford, but he fell in the river in the process. Defendant went to Crawford's car and retrieved a tire jack, which he then used like a hammer to beat Crawford in the head. Schlueter asserted that defendant pulled Crawford's body up the boat ramp toward the woods. Schlueter admitted he helped defendant pull the body over a brush pile and in the process got some blood on his pants.

Defendant testified that (1) right after he, Crawford, and Schlueter got out of the automobile, Schlueter hit Crawford in the head with a beer bottle without any warning; (2) Schlueter and Crawford then kicked and punched each other while moving down toward the river; (3) soon, Schlueter, by himself, came back up to where defendant was standing and grabbed from the car an object which later turned out to be a jack; (4) he then heard thumping sounds but could not see what Schlueter was doing; (4) Schlueter then asked him to help carry the body and he refused; and (5) Schlueter went back to the river and reappeared in a few minutes dragging Crawford's body. According to defendant, Schlueter put the body behind a brush pile, and shortly thereafter, they drove away in Crawford's automobile.

The testimony of defendant and Schlueter was consistent to the extent that they both testified they spent the rest of the night at a Quincy motel and were together for some time the next day. Defendant admitted that he eventually gave the police an untrue account of how he spent the night of December 26-27, 1991. The State presented the testimony of Harold Meyers, a person who had been convicted of several felonies. Meyers testified that while he and defendant were inmates in the Adams County jail, defendant basically admitted to him that he, defendant, had killed Crawford. For the purpose of deciding the issue here, we need not discuss the general facts of the case further at this point.

Over defense objection that no evidence was presented that defendant was guilty by reason of accountability, the court submitted to the jury two instructions. The first, concerning accountability, stated as follows:

> "A person is legally responsible for the conduct of another person when either before or during *the* commission of an offense and with intent to promote or facilitate the commission of that offense, he knowingly *solicits*, aids, abets, agrees to aid or

attempts to aid the other person in the planning or commission of *an* offense." (Emphasis added.)

(See Illinois Pattern Jury Instructions, Criminal, No. 5.03, at 75-76 (2d ed. Supp. 1989) (hereinafter IPI Criminal 2d (Supp. 1989).) Notably this instruction was in the usual form of IPI Criminal 2d No. 5.03 (Supp. 1989) with the article "an" selected from the bracketed articles as the second to last word in the first paragraph of that instruction, rather than the article "the." We discuss the matter further later. The second instruction, pertaining to defendant's responsibility for the act of another, stated:

"A person who is legally responsible for the conduct of another may be convicted for the offense committed by the other person even though the other person, who it is claimed committed the offense, has not been prosecuted for that offense."

See Illinois Pattern Jury Instructions, Criminal, No. 5.06, at 42 (2d ed. 1981) (hereinafter IPI Criminal 2d).

The State agrees that instructing the jury on accountability is improper when no evidence supporting the guilt of the accused on a theory of accountability has been presented. (*People v. Crowder* (1993), 239 Ill. App. 3d 1027, 1030, 607 N.E.2d 277, 279.) Defendant contends that the evidence here conclusively shows that either defendant or Schlueter was solely responsible for the first degree murder of Crawford and that any assistance given by one of them to the other occurred after the crime was completed. We disagree.

■ Section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c)) states:

"A person is legally accountable for the conduct of another when:

\* \* \*

(c) Either *before* or *during the commission of an offense*, and with the intent to promote or facilitate such commission, he *solicits* \*\*\* such other person in the planning or commission of the offense." (Emphasis added.)

IPI Criminal 2d No. 5.03 (Supp. 1989) follows the statutory language. As we have indicated, Schlueter testified that when he and defendant first alighted from the vehicle at the dam, defendant stated "Schlu, let's roll this dude" and made similar remarks before attacking Crawford. Similarly, Schlueter testified that during the course of the beating of Crawford, defendant further suggested that they should kill Crawford.

The jurors were entitled to believe as little or as much of the testimony of the witnesses as they chose. (*People v. Warren* (1965), 33

Ill. 2d 168, 174, 210 N.E.2d 507, 510, citing 7 J. Wigmore, Evidence §2100 (3d ed. 1940); *People v. Patterson* (1980), 88 Ill. App. 3d 878, 886, 410 N.E.2d 1115, 1121.) The jury could have believed Schlueter's testimony that defendant solicited Schlueter prior to commission of the murder and robbery to "roll this dude" with the intent that be done. The jury could have then believed defendant's testimony that Schlueter actually committed the robbery and the killing of Crawford.

■ Only slight evidence is necessary to justify giving an instruction on accountability. (*People v. Dotson* (1986), 143 Ill. App. 3d 135, 142, 492 N.E.2d 903, 907; *People v. Thomas* (1979), 72 Ill. App. 3d 28, 36, 389 N.E.2d 1316, 1322; *People v. Clifford* (1976), 38 Ill. App. 3d 915, 919, 349 N.E.2d 922, 925.) Schlueter's testimony of defendant's solicitation of Schlueter, together with defendant's testimony of Schlueter's actions concerning Schlueter's striking and killing Crawford, furnished that evidence. Moreover, conduct of a party after the commission of an offense can be considered in regard to whether that party was guilty as an accomplice. (*Dotson*, 143 Ill. App. 3d at 142, 492 N.E.2d at 907; *People v. Cleveland* (1986), 140 Ill. App. 3d 462, 469, 488 N.E.2d 1276, 1281.) Here, testimony that defendant stayed with Schlueter for some time after the offense and later lied to the police about his whereabouts corroborates the State's theory that defendant was guilty of first degree murder either as a principal or by accountability.

■ Accordingly, the court properly instructed the jury in regard to accountability. In addition to the two instructions quoted above, defendant also maintains that the court erred in including language concerning accountability in giving an instruction defining murder. Defendant relies on *People v. Terry* (1984), 99 Ill. 2d 508, 516, 460 N.E.2d 746, 750, where the supreme court stated that inclusion of language concerning accountability in an instruction defining murder was error. That court recognized that reference to accountability would be proper in an issues instruction concerning murder when proof of guilt by accountability was presented. The apparent reason given by the supreme court for finding error in having such language in a definition instruction was that the committee note to IPI Criminal 2d No. 5.03 (2d ed. 1981) did not call for such language. The *Terry* court deemed the error harmless because the jury was fully instructed as to the law of the case and the proof of defendant's guilt was overwhelming. Defendant here points out that proof of his guilt is not overwhelming. Nevertheless, the *Terry* court did not indicate that any substantial prejudice occurred there. Here, the jury was fully

instructed as to the law and we do not see how any prejudice could have resulted. Accordingly we find no reversible error.

■ Defendant's other claim of error arises from the use of the word "an" in place of "the" as the next to the last word in the instruction given defining accountability, patterned after IPI Criminal 2d No. 5.03 (Supp. 1989), quoted above. Defendant notes that the committee notes for the giving of that instruction indicate that the word "an" should be used in concluding the first paragraph thereof only when the offense charged differs from the allegedly planned, intended offense. (See IPI Criminal 2d No. 5.03, Committee Note, at 76 (Supp. 1989).) As evidence was presented here that defendant could have been guilty of merely concealing a homicidal death (see Ill. Rev. Stat. 1991, ch. 38, par. 9—3.1(a)), he maintains that the wording of the instruction erroneously told the jury he could be guilty of the murder ("an offense") merely by soliciting, aiding, or abetting, or attempting to aid in the planning or commission *of the concealment of the homicidal death.*

The issue of the use of the word "an" was not raised by defendant at the conference on instructions but was contained in his post-trial motion. The State maintains that any error was not plain error and that the claimed error was waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Defendant points out that when an issue was raised at trial but omitted in a post-trial motion, this court has considered the question, although not plain error, where prejudice of substance to the defendant occurred. (*People v. Maness* (1989), 184 Ill. App. 3d 149, 152, 539 N.E.2d 1368, 1370.) We also recognize the policy requiring that a jury be adequately instructed as to the essential characteristics of the crime of which the accused is charged. *People v. Ogunsola* (1981), 87 Ill. 2d 216, 222, 429 N.E.2d 861, 864.

The form of IPI Criminal 2d No. 5.03 (Supp. 1989) given here requires that conduct making an accused accountable for the offense of another must occur "before or during the commission" of the offense for which the accused is being charged. Thus, by the terms of the instruction, any conduct in regard to the offense of concealing a homicidal death ("an offense") would have had to occur before or during the robbery and murder in order to be covered by the given instruction. No evidence was presented that this occurred. No argument was made by the State that this occurred, nor was there any argument that concealing the body of Crawford was a basis for holding defendant accountable. Any chance that the jury would have been confused by a literal interpretation of the language used in the instruction as given and based defendant's guilt upon activity connected with con-

cealing of the body was extremely remote. We agree with the State that any impropriety in the instruction was waived.

The judgment of conviction and sentence is affirmed.

Affirmed.

KNECHT and LUND, JJ., concur.