THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PEDRO CHAVEZ HERRERA, Defendant-Appellant.

First District (4th Division)   No. 1—90—3007

Opinion filed November 5, 1992.

Thomas A. Gibbons, of Kreiter & Gibbons & Associates, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David Stabrawa, and Marcia Northrup, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Pedro Chavez Herrera, defendant, was convicted of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)), following a jury trial in the circuit court of Cook County. He was sentenced to a term of eight years in the Illinois Department of Corrections. On appeal, defendant contends that he was denied a fair trial where (1) the State was permitted to refer to him as "Herrera"; (2) the State, on cross-examination, asked him about his connection with the "Durango Pipeline" and suggested that he

had transported controlled substances from Mexico; and (3) the State was not required to produce its confidential informant.

We affirm.

On May 4, 1988, Chicago police officers executed a search warrant in the name of Luisa Sanchez (the codefendant whose cause was severed), on a home located at 13953 South Hoxie Avenue, in Burnham, Illinois. The search warrant was based upon information provided by an undisclosed informant that Luisa had sold cocaine to him from inside the residence earlier that day. Officer Thomas West testified that he directed the operation of police officers who searched the home. The witness stated that this assignment was a part of an ongoing narcotics investigation called "Operation Pipeline."

Prior to trial, defendant filed a motion *in limine* asking the court to preclude the State from referring to defendant as Pedro Herrera. After hearing arguments, the trial court denied defendant's motion.

The record discloses that the house on which the search warrant was executed was a split-level model. The living room, dining room, and kitchen were on the main level; the bedrooms were on the upper level; and the family room was on the lower level. At trial, police officers testified that at approximately 4 p.m. they proceeded to the front and back doors of the house. Officer West testified that Luisa opened the front door "within seconds" of the officers knocking. Upon being seen, she began screaming "los Perros," which in Spanish is slang for "the police."

Officers who were stationed at the rear of the house testified that they were able to view defendant through a large unobstructed window in the back door. The officers observed defendant seated at a table in the family room moving his hands about the table. Located on the table, immediately in front of defendant, was a triple beam scale. There was a box of plastic bags on defendant's left, and a large plastic bag containing a quantity of white powder on his right. When Luisa screamed "los Perros," defendant stood up from the table and ran to the back door. The officers arrested defendant as he attempted to leave out of the back door. Upon searching defendant's pockets, the officers found a small plastic bag of cocaine and a folded $10 bill containing cocaine. The total weight of both items was 5.05 grams.

Defendant and Luisa were detained in the living room while officers searched the house. Officers recovered a triple beam scale, a box of plastic sandwich bags, and a large plastic bag containing 440.3 grams of cocaine on top of the table. Beneath the table, officers found a pack of disposable rubber gloves, two small hand scales, and an orange object affixed to one of the scales which was described as a

"personal ditty bag" for keeping small amounts of cocaine. The search also resulted in the recovery of a handgun from a closet in the basement and 6.15 grams of cocaine from one of the upstairs bedrooms.

The officers determined that defendant had a Texas driver's licence and that his keys did not fit the door locks of codefendant's house. Defendant was charged with possession of the 440.3 grams of cocaine recovered at the table where he had been seated. He was not charged with possession of the cocaine recovered from the upstairs bedroom or the small amount found in his pocket.

Defendant testified that he and his family have lived in El Paso, Texas, since 1973. This testimony was corroborated by various documents, stipulated to by the parties, that defendant resided in Texas. Defendant stated that he operated a family-run grocery store in El Paso. The witness lived in Chicago from 1962 to 1973, during which time he worked in the steel mills. The witness stated that he has two sisters who live in Chicago. He testified that he travels to the area approximately three times a year to visit his sisters and friends.

Defendant testified that he met Luisa at a tavern while visiting Chicago about one year before his arrest. He stated that he had bought a gram of cocaine from Luisa when they met and that he had an affair with her. At the time of defendant's arrest, he had come to Chicago for his niece's birthday party. Defendant stated that after the party, he telephoned Luisa and then went to her home. When he arrived at about 1 p.m., they had sexual intercourse. Afterward, Luisa opened the drawer, located next to the bed, and removed one of several "bills" located inside. The bill contained cocaine which they both used. Defendant asked Luisa if she had any cocaine to sell. He stated that he gave Luisa $300, which was all of his money. He further stated that Luisa gave him a gift of one of the $10 bills containing cocaine. They went to the basement, where Luisa removed a large scale and weighed out some cocaine for him.

While in the basement, they heard a noise at the front door. Luisa went upstairs to see who was at the door. Once upstairs, defendant heard her scream "police." He became frightened and attempted to leave out of the back door. As he opened the door, police officers placed him under arrest and searched his pockets.

The following line of questioning occurred during the State's cross-examination of defendant:

"Q. You and Luisa saw one another every time you came to Chicago?

A. When I would come, I would see her.

Q. Now, excuse me, El Paso, Texas is located very close to the Mexican border, isn't it?

MR. GIBBONS [Defense counsel]: Objection. Relevance.

THE COURT: I'll let the witness answer.

A. Next to it.

Q. And, in fact, it's very close to Durango, Mexico, isn't it?

MR. GIBBONS: Objection.

THE COURT: I'd sustain the objection.

Q. Have you ever heard of a thing called the Durango Pipeline, Mr. Herrera?

MR. GIBBONS: Objection.

THE COURT: I'll sustain the objection.

MR. GIBBONS: Side bar.

THE COURT: Respectfully I will deny your request.

MR. GIBBONS: I would be asking for a mistrial.

THE COURT: Respectfully sustained. Ask the jury to disregard it.

\* \* \*

Q. And you made love on each occasion and you got drugs from her on each occasion?

A. Yes, it is.

Q. And, sir, the drugs that you used, they always came from Luisa Sanchez or they always came with you from Texas?

MR. GIBBONS: Objection, Judge, unless he's going to be able to prove up these questions.

THE COURT: I would sustain the objection."

Following jury deliberations, defendant was found guilty of possession of a controlled substance with intent to deliver and was sentenced to a term of eight years in the Illinois Department of Corrections.

■ On appeal, defendant contends that the trial court erred in denying his motion *in limine* barring the use of defendant's name "Herrera." At a hearing on the motion, defendant argued that the Herrera name is notorious in the drug trafficking district throughout the United States and had negative connotations in the mind of the jury. Defendant presented medical records, utility bills, and the warranty deed to his home to establish that his name is Pedro Chavez and not Herrera. Although defendant's grandmother's name is Herrera, his father's name is Chavez. Defendant's position at the trial court level, and on appeal, is that by permitting the State and its witnesses to refer to him as Pedro Herrera he was denied his fundamental right to a fair and impartial trial.

The State countered that defendant was charged under the Herrera name and that the Herrera name was on the motions and the police reports. The State further argued that the witnesses knew defendant as Herrera, and that to call him by any other name would cause confusion in the minds of the witnesses, the assistant State's Attorney and the jury. The trial court found that in order to avoid confusion among the witnesses, the State could refer to defendant as Pedro Chavez Herrera. In making its ruling, the court noted that in Mexico, it is not uncommon for people to use their mother's family name as well as their father's family name.

"Whether a prosecutor's comments or arguments constitute prejudicial error is evaluated according to the language used, its relation to the evidence, and the effect of the argument on the defendant's right to a fair and impartial trial." (*People v. Coleman* (1990), 201 Ill. App. 3d 803, 807.) Improper remarks "will not be considered reversible error unless they constitute a material factor in the defendant's conviction or result in substantial prejudice to the accused." (*People v. Cook* (1990), 201 Ill. App. 3d 449, 461.) "Improper [comments] may be considered harmless error if there is overwhelming evidence of defendant's guilt." *Cook*, 201 Ill. App. 3d at 461.

The facts lead us to conclude that the prejudicial effect of permitting the State to refer to defendant as Herrera was insufficient to warrant reversal. The evidence supporting defendant's conviction was overwhelming, and we do not believe referring to defendant as Herrera resulted in substantial prejudice.

The trial court permitted the State to refer to defendant as Herrera, the name by which the witnesses had come to know him, and stated that it was denying his motion for the legitimate purpose of avoiding confusion among the jury, the State, and the witnesses. Although the record is devoid of facts as to how witnesses came to know defendant as Herrera, the use of the name was not wholly inappropriate. The trial court properly noted that defendant's maternal family name was Herrera and that it was not uncommon, under the circumstances, to use the family name of either parent.

■ Defendant also contends that prejudicial error occurred when the State cross-examined him about his name and the Durango Pipeline and suggested that he had transported controlled substances from Mexico.

The State maintains that defendant has waived review of this issue because he failed to object to the statements at trial and to raise them in a post-trial motion. Generally, an issue which has not been objected to during trial and has not been raised in a post-trial motion is

not preserved for appeal unless the error was so serious that it deprived defendant of a fair trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 187.) As the issue here alleges the violation of a constitutional right, we will review the statements to determine whether defendant was denied a fair trial.

The State maintains that its cross-examination was proper as the questions related to the evidence and were within the scope of direct examination. The State further maintains that if the statements were improper, the comments were harmless as they did not constitute a material factor in defendant's conviction.

The court in *People v. Johnson* (1991), 218 Ill. App. 3d 967, explained the scope of cross-examination as follows:

"[T]he limitation on the scope of cross-examination is construed liberally to allow inquiry into whatever tends to explain, qualify, modify, discredit, or destroy the testimony on direct. [Citations.] In addition, a 'good-faith basis is required on the part of examining counsel as to the truth of the matter contained in leading questions propounded to a witness on cross-examination.' " (*Johnson*, 218 Ill. App. 3d at 988, quoting M. Graham, Cleary & Graham's Handbook of Illinois Evidence §607.3, at 340 (5th ed. 1990).)

The scope of cross-examination rests within the sound discretion of the trial court, and its findings will not be disturbed absent an abuse of discretion. (*People v. Riggins* (1990), 205 Ill. App. 3d 904, 914.) "Reversal is required only where there is a clear abuse of discretion resulting in manifest prejudice to defendant." *Johnson*, 218 Ill. App. 3d at 988.

On review, we believe the State had a good-faith basis for exploring on cross-examination of defendant whether the bag of cocaine found in his possession belonged to him or to Luisa. Defendant testified that he resided in El Paso, Texas, and that he traveled to Chicago three times a year to visit family and friends. He further testified that he was merely visiting Luisa and that the cocaine seized while in his possession did not belong to him.

The State was entitled to discredit defendant's testimony that the cocaine found in his possession at the time of his arrest did not belong to him. However, we believe the State's suggestions that defendant was affiliated with the Durango Pipeline and had transported cocaine from Mexico were improper. Nevertheless, we conclude that the comments were not of a sufficient nature to cause prejudice to defendant's case.

Defendant was charged with possession of a controlled substance with intent to deliver. In order to support defendant's conviction, "the State must establish that the defendant had knowledge of the presence of narcotics, that the narcotics were in the immediate control or possession of the defendant, and that the amount of narcotics was in excess of any amount which might be viewed as merely possessed for personal use." (*People v. Witherspoon* (1991), 216 Ill. App. 3d 323, 333.) Here, the comments did not constitute a material factor in defendant's conviction nor did they result in substantial prejudice. (See *People v. Cook* (1990), 201 Ill. App. 3d 449.) The State's comments were relatively limited and did not relate to a material element of the offense. Moreover, we believe the trial court cured the prejudicial effect of the State's cross-examination by sustaining defendant's objections.

■ Defendant also contends that the trial court erred in denying his motion to produce the State's confidential informant. Defendant contends that the informant could have provided corroborating testimony that he was not in the house earlier that day and that he was visiting Luisa's house. The State maintains that the informant's role was not that of a transactional informant and that any testimony he might have given would not have assisted defendant's case.

Supreme Court Rule 412(j)(ii) addresses the circumstances whereby disclosure of an unidentified witness is required. The rule provides, in pertinent part, as follows:

> "*Informants.* Disclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused. Disclosure shall not be denied hereunder of the identity of witnesses to be produced at a hearing or trial." 134 Ill. 2d R. 412(j)(ii).

In determining whether a confidential informant's identity should be disclosed, a court should balance "the strong public policy reasons favoring it against a defendant's need for disclosure in order to prepare his defense." (*People v. Witherspoon* (1991), 216 Ill. App. 3d 323, 331.) Where the confidential informant is not a participant or a material witness to the essential elements of the offense, his identity can be withheld. (*People v. Velez* (1990), 204 Ill. App. 3d 318, 326.) Moreover, defendant bears the burden of establishing that the informant can testify to facts bearing on the charged offense. *Witherspoon*, 216 Ill. App. 3d at 331.

After reviewing the record, we agree with the trial court's finding that defendant did not meet his burden of demonstrating the need for

disclosure of the informant's identity. The fact that defendant was not present in the house at the time of the earlier drug transaction between Luisa and the informant bears no relevance to defendant's presence in the house at the time of his arrest. Police officers testified that they observed defendant sitting at a table which had 440.3 grams of cocaine on it. The informant's information was used only to support a search warrant of the residence. Here, the informant did not participate in the crime and had little to offer as a material witness to the essential elements of the offense.

Defendant also contends that the informant may have provided additional relevant evidence; however, he does not state with specificity what information he believes the informant could provide. "When there has been no specific request, absent a finding that the omitted evidence creates a reasonable doubt of the defendant's guilt, constitutional error has not been committed." *People v. Velez* (1990), 204 Ill. App. 3d 318, 325.

Based on our review of the record, we find that the trial court did not err in denying defendant's motion to produce the State's confidential witness.

For the foregoing reasons, we affirm the ruling of the circuit court.

Affirmed.

LINN and McMORROW, JJ., concur.