THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY LEE, Defendant-Appellant.

Second District   No. 2—91—0101

Opinion filed April 2, 1993.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, and David W. Devinger, of Woodstock, for appellant.

Michael J. Waller, State's Attorney, of Waukegan, and Daniel J. Walsh, of Johnson, Frank, Frederick & Walsh, of Urbana (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Following a jury trial, defendant, Anthony Lee, was found guilty of robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—1(a)) and unlawful possession of a stolen vehicle (Ill. Rev. Stat. 1989, ch. 95½, par. 4—103(a)(1)). The court sentenced defendant to concurrent seven-year terms of imprisonment. Defendant appeals, contending that the State failed to prove defendant's guilt of either offense beyond a reasonable doubt because the evidence showed only that defendant was merely present at the crime scene when two other individuals took the victim's money and automobile.

The victim, Andre Wallace, testified that he finished work at the Great Lakes Naval Base at 7 p.m. on October 4, 1990. Wallace then went to the apartment of Danielle, a friend, arriving between 7:30 and 8 o'clock. Wallace was introduced to two females and two males, "Blue" and "Daddy." Wallace identified defendant as "Daddy" and Mark Grashen as "Blue." Wallace was told that defendant was Danielle's cousin.

Wallace played cards for approximately 2½ to 3 hours. During the game, defendant asked Wallace for a ride to a girlfriend's house and offered Wallace $5 for gas. Wallace agreed, reached into his shirt pocket, and gave defendant $5 change from a $10 bill. Shortly before midnight Wallace stated that he had to be leaving. Wallace asked defendant if Grashen was coming along and defendant said, "Yes." Grashen climbed into the backseat of Wallace's car, and Wallace and defendant occupied the front seats with Wallace driving. Both defendant and Grashen directed Wallace to the Utica Street projects in Waukegan, where Wallace parked the car.

Grashen exited the car and walked approximately 15 feet where he met another individual, named Eddie. When Wallace asked defendant if the Utica Street projects were the intended destination, defendant replied that Grashen was just talking to a friend for a second and that he would be right back. Shortly thereafter, defendant got out of the car and joined the others. Defendant then called Wallace request-

ing that he join the group and meet Eddie. Wallace exited the car and either Grashen or defendant introduced Wallace to Eddie. As Wallace proceeded to shake Eddie's hand, Grashen grabbed Wallace from behind, placed his arm in a choke hold around Wallace's neck, and said repeatedly, "you are going to go to sleep." Wallace then reached in his front shirt pocket, pulled out $13 and handed it toward Eddie. Eddie took the money from Wallace's hand. Defendant and Eddie were walking toward Wallace before Wallace lost consciousness.

When Wallace regained consciousness, he found himself on the hood of his car. As he climbed off the hood, he noticed the three individuals talking on the driver's side of the vehicle. Defendant was sitting in the driver's seat with the keys in the ignition. Wallace pleaded with the group to return his identification because he needed it to get back to the naval base. Eddie and Grashen stated that they did not believe Wallace had given them everything that he had. Wallace then unbuttoned his shirt and pulled his pockets inside out to show that he had nothing else. Defendant then looked on the floor and seats for Wallace's identification. The group then stated that they had not seen Wallace's identification.

Wallace then attempted to get into the car to leave, but defendant made "a motion like get back." Wallace testified that defendant did not touch Wallace, but "was motioning me as to get away." Grashen and Eddie also told Wallace "push along, push on, push on." As Wallace walked away, he noticed the driver's door close and Grashen climb into the backseat. Wallace walked until he was out of sight and then ran until he reached a pay phone.

On cross-examination, Wallace testified that defendant originally requested a ride only for defendant and that defendant never told Wallace the exact location of defendant's girlfriend's house. Wallace did not know if defendant saw how much money Wallace had while at Danielle's apartment. Wallace admitted that he never saw his vehicle leave the scene and never saw defendant driving it. Wallace stated that only Grashen and Eddie told Wallace that they believed Wallace had more money in his possession and that Wallace gave the $13 to Eddie, not to defendant. Wallace further testified that defendant never stopped any of Grashen's or Eddie's actions, nor did Wallace ever see defendant call the police.

Officer Trent Truby arrived a couple of minutes after Wallace phoned for help. Truby testified that he and Wallace drove to 565 South Utica, where Wallace said his car had been stolen. Truby and Wallace checked the parking lot, but could not locate the car. Truby

then reported the information concerning Wallace's car to the Illinois State Police emergency network.

Truby and Wallace then drove to Danielle's apartment, where Wallace had originally met defendant and Grashen. There was no answer at the door so Officer Truby and Wallace drove back to the naval base. Before finishing his work shift, Truby entered a description of Wallace's car into the law enforcement agency data system.

On October 5, Waukegan Detective Donald Meadie was assigned to the Wallace case. Meadie testified that he received a phone call from the Chicago police department on October 6. Meadie was informed that Grashen and defendant were being held in custody in connection with the Wallace case. Wallace's car was also at the Chicago police department. Meadie and another officer then drove to the Chicago police department station, picked up defendant and Grashen and Wallace's car and brought them back to Waukegan.

The State rested following Detective Meadie's testimony. After defendant's motion for a directed verdict was denied, defendant was found guilty of robbery and unlawful possession of a stolen motor vehicle.

Defendant appeals, contending that the State failed to prove his guilt of the offenses beyond a reasonable doubt. Specifically, defendant contends that he was merely present when Wallace's money and automobile were taken by Grashen and Eddie. Moreover, defendant contends that he was not seen driving or possessing Wallace's car. Therefore, defendant argues, the State did not prove beyond a reasonable doubt that defendant was accountable for the offenses of robbery and unlawful possession of a stolen motor vehicle.

The trier of fact is not required to search out a series of potential explanations compatible with innocence and then raise them to the status of reasonable doubt. (*People v. Ware* (1980), 82 Ill. App. 3d 297, 302.) Nor must each link in the circumstances relied upon to establish guilt individually constitute proof beyond a reasonable doubt. (*People v. Foster* (1979), 76 Ill. 2d 365, 374.) Conflicting evidence alone will not justify the reversal of a conviction; rather, reviewing courts will set aside a guilty finding only if the evidence is palpably contrary to the finding or so unreasonable, improbable, or unsatisfactory as to leave a reasonable doubt about the accused's guilt. *People v. Palmer* (1984), 125 Ill. App. 3d 703, 709.

We note initially that defendant is correct in stating that a person's mere presence at the crime scene, even with knowledge that a crime has been committed, is insufficient to establish accountability for the crime. (*People v. Nugara* (1968), 39 Ill. 2d 482, 487; *People v.*

*Perruquet* (1988), 173 Ill. App. 3d 1054, 1063.) Section 5—2(c) of the Criminal Code of 1961 provides in pertinent part:

> "A person is legally accountable for the conduct of another when:
>
> * * *
>
> (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1989, ch. 38, par. 5—2(c).)

The State's proof must establish beyond a reasonable doubt that whatever conduct facilitated the later offense was with the intent that such offense be committed. (*People v. Ware* (1980), 82 Ill. App. 3d 297, 306.) Moreover, proof that a person was present at the commission of a crime without disapproving or opposing the crime may be considered along with other circumstances, such as the fact that defendant later maintained a close affiliation with his or her companions (*People v. Grice* (1980), 87 Ill. App. 3d 718) and failed to report the crime (*People v. Bailey* (1985), 132 Ill. App. 3d 399; *People v. Watson* (1982), 106 Ill. App. 3d 315). Indeed, a person's assistance prior to or during the commission of the crime which amounts to accountability can be inferred from the conduct which occurs after the event. *People v. Young* (1983), 116 Ill. App. 3d 984, 994.

■ Defendant contends that the evidence did not establish sufficiently that he should be held legally accountable for the conduct of Grashen and Eddie. Defendant contends that, when viewed in a circumspect manner, the facts presented at trial do not establish beyond a reasonable doubt that defendant intended to aid, facilitate, or participate in the crimes for which he was charged. (See Ill. Rev. Stat. 1989, ch. 38, par. 5—2(c).) Defendant contends that it was Grashen who directed Wallace to the Utica Street projects where Wallace was eventually robbed. Although defendant admits that defendant also gave directions to Wallace, defendant argues that there is no indication that his doing so was part of some preconceived plan to set Wallace up. Defendant asserts that although Grashen may have had a hidden agenda prior to leaving Danielle's apartment, this should not be imputed to defendant. Defendant contends that, for all he knew, Grashen simply wished to meet someone at the Utica Street projects and defendant innocently helped Wallace to find that location. Defendant contends that the events which ensued upon reaching the Utica Street projects "abysmally failed to show any nexus between the crimes and the defendant."

Additionally, defendant maintains that his actions at the scene did not evince any knowledge of Grashen's apparent robbery attempt. Defendant contends that his movement towards Wallace before Wallace lost consciousness could easily be attributed to defendant's surprise at Grashen's actions in choking Wallace, coupled with a "half-hearted attempt to aid Wallace," who evidently was about to black out. Defendant asserts that it is mere speculation to charge defendant with knowledge or intent to participate in Grashen's ill-conceived plan.

Defendant also points to the period following Wallace's regaining consciousness on the hood of the car. Wallace climbed off the hood and noticed the group talking. Defendant points out that Wallace, upon noticing that his identification holder was missing, asked the group if they would return it. Defendant stresses that, in response, Grashen and Eddie, but not defendant, thereupon approached Wallace and told him they did not believe that Wallace had given them everything. Defendant contends that rather than press Wallace for more property as Grashen and Eddie had done, defendant remained in the driver's seat of Wallace's car and looked on the floor and seats for the identification card. Defendant also relies on the fact that when Wallace attempted to reapproach the car, defendant made a motion to Wallace "to like get back." Defendant asserts that, while his signal to Wallace to "get back" certainly raises a question regarding his participation in the offense, it can be easily said that this action was designed to prevent Wallace from further harm. According to defendant, defendant's actions served as a warning to Wallace that it would be in Wallace's best interest simply to walk away while he still was able to do so.

In summary, defendant contends that, looking at the entire sequence of events, defendant's actions constituted mere acquiescence in Grashen's and Eddie's conduct, which is not a crime. *People v. Nugara* (1968), 39 Ill. 2d 482, 487; *People v. Jones* (1990), 196 Ill. App. 3d 937, 964.

Defendant relies heavily on *Jones*, attempting to distinguish its facts from those in this case. It is true that *Jones* involved evidence which more clearly supports an accountability theory than do the facts here. The defendant in *Jones* agreed to act as a police lookout, followed the victim upstairs and remained out of sight, was aware friends intended to murder the victim, took food from the victim's bicycle after the murder, and failed to report the crime to anyone. However, merely because defendant's accountability may not be as obvious as that of the defendant in *Jones*, it does not automatically follow that defendant cannot be held guilty under an accountability theory under the facts presented here.

To the contrary, we believe that, in viewing the continual sequence of events, defendant's participation rose to a level above mere presence at the crime scene and constituted more than mere acquiescence in Grashen's and Eddie's actions. Even if the jury did not believe defendant actively participated in the physical attack on Wallace or the physical taking of Wallace's vehicle, there was sufficient evidence which, if believed by the jury, established beyond a reasonable doubt that defendant was accountable for these offenses.

The evidence showed that defendant was at the scene of the crime while Wallace was being robbed. According to Wallace, defendant was facing Wallace while the robbery took place and did nothing to aid Wallace against his assailants. Defendant also paid Wallace for the ride and gave him directions to the Utica Street projects where Wallace was robbed and his car was stolen. While defendant argues that his paying Wallace for the ride was evidence of defendant's good intentions, such payment could also be inferred as a ploy to get Wallace to an out-of-the-way place in order to rob him and steal his car.

Regarding defendant's contentions that his actions were mere "acquiescence," we note that when Wallace regained consciousness on the hood of his car, defendant was sitting in the driver's seat of the car with the keys in the ignition. Although defendant helped Wallace to look for Wallace's identification card, this was not enough to exonerate defendant from the crimes. Additionally, although defendant's gesture to Wallace to "get back" when Wallace reapproached the car may have been for Wallace's protection, the jury could also infer that such action was designed to keep Wallace from entering his own car in order to facilitate it being stolen.

While it is true that one's mere presence at a crime scene is not enough to sustain a conviction under section 5—2(c) of the Criminal Code of 1961, one may be found guilty of aiding or abetting without actively participating in the overt act. (*People v. Reid* (1990), 136 Ill. 2d 27, 61.) A person's accountability for a crime may be inferred from his conduct after the event. (*Reid*, 136 Ill. 2d at 62.) The factors which may sustain a conviction for aiding and abetting a crime when one does not participate in the overt act are: presence at the crime scene without disapproving or opposing the crime, maintaining a close affiliation with companions after the perpetration of the crime, and failure to report the offense to the police. *Reid*, 136 Ill. 2d at 62; *People v. Scherzer* (1989), 179 Ill. App. 3d 624, 639.

The evidence here supports all three factors allowing for a conviction of defendant on an accountability theory. Wallace testified that defendant was present at the crime scene and did not oppose the rob-

bery or confiscation of Wallace's car. Wallace testified that defendant did not attempt to intervene at all to prevent Wallace from being injured. Wallace also testified that defendant did not leave the area when Grashen was knocking Wallace unconscious, nor did defendant stop any of Grashen's or Eddie's actions.

The second factor, which requires defendant to maintain close affiliation with the perpetrators, was also satisfied. When Wallace awakened on the hood of his car, he saw defendant in the driver's seat. Defendant remained with the two other perpetrators and continued to sit in the driver's seat of the car during the time between when Wallace woke up and when Wallace eventually left the area. Later, defendant was arrested in Chicago, where Grashen was also arrested and where Wallace's car was recovered. Defendant correctly points out that the State failed to bring in the arresting officers to testify, nor did the State establish the exact locations in Chicago where defendant, Grashen, and the automobile were found. Nevertheless, the evidence was sufficient to support a finding that defendant was still with the perpetrators of the crime. Defendant had not returned to or remained in Waukegan but was in Chicago, where Grashen and the stolen vehicle were found.

The third and final factor to support a conviction under an accountability theory, whether defendant made an attempt to contact the police or anyone else about the crime, was also satisfied. No evidence was given which would establish that defendant contacted the police about the crimes in question. The only testimony offered on this subject was given by Wallace, who testified that he did not see defendant call the police. It is well settled that, in determining whether accountability has been established, the trier of fact may consider a defendant's failure to report the incident to or confide in anyone about it. *People v. Green* (1988), 179 Ill. App. 3d 1, 16.

We believe that all of the evidence, as set forth above, provided a sufficient basis for the jury to conclude beyond a reasonable doubt that defendant was guilty of robbery and unlawful possession of a stolen motor vehicle, under an accountability theory.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

WOODWARD and BOWMAN, JJ., concur.