THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RODERIC HODGE, Defendant-Appellant.

Fifth District   No. 5—92—0568

Opinion filed September 21, 1993.

WELCH, J., concurring in part and dissenting in part.

Irving Miller, of Ryan, Miller & Trafelet, P.C., of Chicago, for appellant.

Jeffery Farris, State's Attorney, of Cairo (Norbert J. Goetten, Stephen E. Norris, and Mary H. Doyle, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Roderic Hodge, was found guilty by a jury in the circuit court of Alexander County of unlawful possession of a controlled substance with intent to deliver (cocaine), unlawful use of weapons, and possession of a firearm without the requisite firearm owner's identification card (FOID) (Ill. Rev. Stat. 1991, ch. 56½, par. 1401(c); Ill. Rev. Stat. 1991, ch. 38, pars. 24—1(a)(4), 83—2). Codefendant Derrick Boyd was tried at the same time, represented by the same attorney. The court sentenced defendant on the intent-to-deliver conviction to four years' probation with six months in the county jail, six months' home confinement, a fine of $10,000, and an $800 street-value fine. On the unlawful use of weapons charge, the court sentenced defendant to six months in the county jail and imposed a fine

of $500 plus court costs. Defendant was ordered to pay a $500 fine plus costs on his conviction for possession of a firearm without an FOID.

Defendant appeals, contending: (1) he was not proven guilty beyond a reasonable doubt of unlawful possession of a controlled substance with intent to deliver; (2) defense counsel provided ineffective assistance which rendered the outcome of the trial unreliable; (3) the trial court erred by not granting defendant's motion for mistrial predicated on an allegedly improper communication between an employee of the State's Attorney's office and a juror; and (4) the trial court erred in imposing a $10,000 fine without making a determination as to defendant's ability to pay such a fine.

On March 17, 1992, Cairo police officers responded to a call from the McBride Housing Courts which reported that two "Texas boys" were beating a man in the housing project. Two officers responded and observed a group of men attacking another man. As the officers approached, the group, including the victim of the beating, scattered and ran. The pursuit of the individuals involved was unsuccessful, and the officers returned to the housing project. An unidentified person approached them and told them that the person responsible for the beating was over in the "800 row" of the McBride Housing Courts. An anonymous tipster also telephoned the Cairo police department and said that the two men responsible for the beating were in apartment number 844 of the McBride project. Several officers went to that address and were met by the occupant, Robin Heard. Ms. Heard told the officers to wait outside the apartment while she went into her apartment and ordered defendant and his companion to leave. Defendant left the apartment first, and his companion, codefendant Derrick Boyd, emerged shortly thereafter.

Ms. Heard gave the police officers permission to search her home. The police found a semiautomatic handgun and a pill vial lying in close proximity to one another on a cedar chest in the living room of the apartment. The gun and vial were partially concealed by a heap of clothing lying on top of the chest. The discovery of the gun and pill vial, which appeared to contain cocaine, prompted the police to place defendant and Boyd under arrest.

When defendant was booked, he had about $900 in cash in his possession, $860 of which was in $20 bills. Defendant attributed his bankroll to earnings from the cleaning service he and his wife ran in northern Illinois. Boyd had $1,142 in cash on his person when he was arrested, $860 of which was in $20 bills. Boyd explained that the money was the proceeds from his work washing cars, changing oil

and tires, and working on lawnmowers in the Cairo area for people whose names he could not remember.

At trial, Robin Heard testified that defendant and his companion were mistakenly let into her apartment by two of her children. When Ms. Heard went downstairs to investigate, she found that the downstairs lights had been turned off. Defendant informed her that they had entered her apartment because the police were outside and that they would leave if she felt uncomfortable. She responded that she was uncomfortable and asked them to leave, but they did not do so. Ms. Heard had seen defendant and his companion around the neighborhood before but had never spoken or socialized with them. She knew defendant as "Rick" and Boyd as "Dee."

Defendant and Boyd roamed around the apartment, upstairs and down, looking out of windows as they did so. Both knelt at a cedar chest by the living room window in order to look out of the window from the darkened room. When Ms. Heard turned the lights on, defendant turned them off. When she again turned them on, defendant ordered her to turn them off and keep them off, and Ms. Heard obeyed.

Ms. Heard's neighbor, Carla Wells, came to the apartment to inform Ms. Heard the police were searching for someone. Ms. Wells came in and went upstairs with Ms. Heard. Defendant was in the upstairs bathroom, and Boyd was in Ms. Heard's daughters' room. The children became noisy, prompting defendant to order Ms. Wells to make the children be quiet. She met with limited success, and defendant again instructed her to go into the girls' room and tell them to be quiet. Ms. Wells complied briefly with defendant's demand and then left to check on her own children.

Everyone then went downstairs, and defendant sent Ms. Heard outside to see where the police were. Ms. Heard went outside but, concerned about her children's well-being, remained by the back door with Ms. Wells and Ms. Wells' companion. The police approached Ms. Heard and told her they had been informed that the two men for whom they were looking had run into her house. Being apprehensive about the safety of her children, Ms. Heard informed the police she would go inside and persuade defendant and Boyd to come out. Ms. Heard entered the house and told defendant the police wanted him to come out with his hands up. Before he complied, defendant removed a pistol from the back waistband of his trousers and placed it on the kitchen table. As he began to go out the kitchen door, he was met by an officer inquiring as to the whereabouts of Boyd. Ms. Heard asked the officer to wait while she got defendant's companion. She found

Boyd at the top of the stairs. Boyd came down and exited with the officers.

Ms. Heard then gave the police officers permission to search her house. She turned on the living room lights, and the officers immediately spotted the gun, partially hidden under clothing heaped on the cedar chest in the living room by the front window. As an officer picked up the gun from the cedar chest, Ms. Heard heard a rattling sound. She observed the officer pick up a pill vial. Ms. Heard further testified she did not own a gun and did not permit any kind of drugs in her house. Ms. Heard also reported that several days after defendant had been arrested and released on bond, he approached her and asked her to take responsibility for the drugs found in her apartment. Defendant assured her that he would take care of her while she was incarcerated. Ms. Heard refused to do so. Defendant then tried to persuade her to place the blame on Boyd. Again, she refused.

The State also presented testimony through one of the police officers that the substance in the pill vial was crack cocaine weighing approximately 4.07 grams. This quantity was equivalent to approximately 40 doses of crack cocaine which sold on the street in Cairo for $20 each. According to the officer, four grams of crack cocaine was a larger amount of the drug than would normally be possessed by a drug addict for personal consumption.

Ms. Heard's live-in companion testified that neither the gun nor the cocaine found in her apartment belonged to him and that he had never had cocaine in the apartment. Ms. Wells also testified she did not have any cocaine when she went into Ms. Heard's apartment on the date in question, nor had she seen any cocaine or a gun in the apartment at that time.

Boyd testified that he was a resident of Houston, Texas, and had been visiting a girl friend in Cairo. He asserted that he ran from the commotion in the housing project because he feared the Cairo police. When he entered the Heard apartment with defendant, he did not know defendant was armed and had never seen the pill vial containing the cocaine. He also asserted he did not know defendant very well and did not consider him "a real, real close friend." While he claimed defendant was merely a speaking acquaintance, Boyd admitted that they had gone to local clubs and people's homes together and that he had ridden in the same automobile alone with defendant. He further maintained it was purely coincidental that he ended up running away from the commotion with defendant, and that they had both run into the same house to seek refuge from the police. Boyd admitted he had been staying with his girl friend, right across from Ms. Heard's apart-

ment, and yet had chosen to run into Ms. Heard's apartment rather than return to the apartment he shared with his girl friend.

Defendant testified he was in Cairo visiting a girl friend at the time of his arrest. He characterized his relationship with Boyd as "just a gentlemen [*sic*] I've seen on the street." He stated he had a large amount of $20 bills when arrested because it was more convenient to pay for purchases with smaller bills as many people were unwilling to change a $50 or $100 bill. He further testified he had run from the approaching police cars because he wanted to get out of the way of the police in order to let them do their job. He maintained he was carrying a gun in the back waistband of his trousers to protect the large amount of cash on his person in a high-crime area. Defendant admitted he did not have an FOID.

Defendant next testified he was just "hanging out" at the housing project on the date of his arrest. He described Boyd as a casual acquaintance with whom he ended up running and going into Ms. Heard's house by happenstance. According to defendant, Ms. Heard suggested that he and Boyd not leave during the commotion and that it would be all right for them to remain in the apartment until the furor had died down. He admitted telling Ms. Wells to keep the children quiet. Defendant also testified he left the gun on the kitchen table of Ms. Heard's apartment, not on the cedar chest in a pile of clothing.

The jury was instructed, *inter alia*, on constructive possession and accountability for the acts of others. After defendant was found guilty, he obtained private counsel. A post-trial motion seeking a new trial was denied, defendant was sentenced, and the instant appeal ensued.

When reviewing a challenge to the sufficiency of the evidence supporting a finding of guilt, we do so from a perspective which recognizes that it is the function of the jury to determine the accused's guilt or innocence. We will not reverse a conviction unless the evidence is so improbable as to warrant a reasonable doubt of the defendant's guilt. (*People v. Eyler* (1989), 133 Ill. 2d 173, 191, 549 N.E.2d 268, 276.) The relevant question is whether, viewing the evidence in the light most favorable to the prosecution, any trier of fact could have found the elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) We bear in mind that it is the province of the jury to weigh witness credibility and to resolve conflicts or inconsistencies in testimony. *People v. Phillips* (1989), 127 Ill. 2d 499, 514, 538 N.E.2d 500, 503.

A conviction for unlawful possession of a controlled substance with intent to deliver must be supported by evidence which establishes that the defendant had knowledge of the presence of narcotics, the narcotics were in the immediate control or possession of the defendant, and the amount of narcotics was in excess of any amount which might be viewed as merely possessed for personal use. (*People v. Herrera* (1992), 238 Ill. App. 3d 284, 291, 606 N.E.2d 267, 272.) Defendant asserts there is no evidence to support the conclusion that he actually or constructively possessed the cocaine or that he aided or abetted Boyd in doing so. Possession of narcotics may be established by evidence of either actual or constructive possession. (*People v. Songer* (1992), 229 Ill. App. 3d 901, 905, 594 N.E.2d 405, 408.) When narcotics are found on the premises, rather than on the person of the defendant, the State must prove the defendant had control of the premises in order to permit the inference that the defendant had knowledge and control over the narcotics. (*People v. Adams* (1993), 242 Ill. App. 3d 830, 832, 610 N.E.2d 763, 765.) It is a reasonable inference that a person has requisite knowledge of possession, absent other facts and circumstances which might create a reasonable doubt as to guilt in the minds of the jury, where narcotics are found on the premises under the defendant's control. (*People v. Frieberg* (1992), 147 Ill. 2d 326, 361, 589 N.E.2d 508, 524.) Moreover, a finding of constructive possession may be based on a person's intent and capability to maintain control and dominion over a controlled substance, even though he does not exert actual personal present dominion over it. *Frieberg*, 147 Ill. 2d at 361, 589 N.E.2d at 524.

■■ Viewing the evidence in the light most favorable to the prosecution, we find defendant possessed the intent and the capability to maintain control and dominion over the Heard apartment. This, in turn, allows the inference that defendant knew of the presence of the drugs and intended to exert control and dominion over them. After defendant and Boyd were let into the apartment by Ms. Heard's young children, defendant proceeded to take command. He turned off the lights in the apartment and was successful in intimidating Ms. Heard into leaving them turned off so that he might look out of the windows of the apartment to monitor police activity without risking observation. He ordered Boyd to circulate about the apartment, upstairs and down, in order to observe police activity from various vantage points. When Ms. Heard's neighbor was admitted to the apartment, he ordered her to control the children and keep them quiet on two separate occasions. Clearly, defendant was in constructive possession of the residence and, by inference, the drugs.

■ Defendant asserts that the State failed to establish his guilt beyond a reasonable doubt based on accountability for his codefendant's actions. Section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c) (now 720 ILCS 5/5—2(c) (West 1992))) states as follows:

"A person is legally accountable for the conduct of another when:

* * *

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c).)

The intent to promote or facilitate a crime may be shown by evidence that the defendant shared the criminal intent of the principal or by evidence that there was a common criminal design. (*People v. Stanciel* (1992), 153 Ill. 2d 218, 234-35, 606 N.E.2d 1201, 1210.) Common design can be inferred from the circumstances surrounding the commission of an unlawful act. (*People v. Mata* (1993), 243 Ill. App. 3d 365, 370, 611 N.E.2d 1235, 1240.) Words of agreement are not necessary to establish a common criminal design. (*People v. Lovelady* (1991), 221 Ill. App. 3d 829, 840, 582 N.E.2d 1217, 1227.) A person's assistance prior to or during the crime which amounts to accountability may be inferred from conduct which occurs after the event. (*People v. Lee* (1993), 243 Ill. App. 3d 29, 35, 611 N.E.2d 561, 564.) Here, defendant and Boyd ran together from the site of the beating to the Heard apartment. Once they were admitted by the children, they cooperated in maintaining surveillance of the area in front of and behind the building. After defendant left the apartment to surrender, leaving his gun on the kitchen table, Boyd surrendered. Upon gaining entry to the apartment, the police found the gun in the living room, where it had been deposited with the vial of crack cocaine under a jumble of clothing. It is clear that the jury listened to the evidence and inferred that defendant and Boyd acted in concert when they ran from the police and commandeered Ms. Heard's apartment as a lookout post. The jury obviously concluded that the presence of the crack cocaine and automatic weapon in the apartment was attributable to one or both of defendants and that the evidence supported findings of guilt for both defendants based on constructive possession and accountability. Jurors are entitled to believe as little or as much of the testimony of the witnesses as they choose. (*People v. Fusco* (1993), 245 Ill. App. 3d 524, 528, 615 N.E.2d 38, 41, citing *People v. Warren* (1965), 33 Ill. 2d 168,

174, 210 N.E.2d 507, 510.) They chose to disbelieve defendant and Boyd and believe the State's witnesses. Their conclusions on issues of credibility are within their exclusive purview. (See *People v. Reid* (1990), 136 Ill. 2d 27, 61, 554 N.E.2d 174, 190.) We find that any rational trier of fact could have so concluded, after viewing the evidence in the light most favorable to the prosecution.

Although defendant placed the automatic pistol on the kitchen table prior to leaving the house by the kitchen door, the gun was found immediately adjacent to the pill vial containing crack cocaine on a cedar chest in the living room, in front of the living room window. Ms. Heard testified that after Ms. Wells left her apartment, "We all went downstairs." After defendant left the house, the only people remaining in the house were two small children, who were in upstairs bedrooms, and Boyd, who, Ms. Heard said, "was upstairs or by the front door." When Ms. Heard returned to the house to persuade Boyd to leave peaceably, she found him standing at the head of the stairwell. The circumstantial evidence presented at trial clearly led the jury to determine that Boyd, for whose action defendant was accountable, moved the gun from the kitchen table to the cedar chest in the living room and hurriedly attempted to conceal both the gun and the vial of crack cocaine under a pile of clothing prior to going back upstairs. Where the truth must be ascertained from a debatable set of circumstances, it is a matter for the trier of fact and it is not for the reviewing court to substitute its own opinion. (*People v. Bowman* (1990), 138 Ill. 2d 131, 139, 561 N.E.2d 633, 637.) Although both defendant and Boyd disavowed any connection with the vial of crack cocaine, Ms. Heard, Ms. Wells, and Ms. Heard's live-in companion all testified that the pill vial which contained the crack cocaine was not theirs. Witness credibility is a matter of determination by the trier of fact. It is not the function of a reviewing court to retry a defendant when considering a challenge to the sufficiency of his guilt, and determinations of the credibility of the witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence are the responsibilities of the trier of fact. (*People v. Thomas* (1993), 242 Ill. App. 3d 266, 275, 609 N.E.2d 1067, 1073.) Given these rules of appellate review, we find it inappropriate to reassess witnesses' credibility and therefore acquiesce in the jury's finding in regard to defendant's possession of the crack cocaine. We cannot say that the jury's findings in this instance are so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of defendant's guilt of possession of a controlled substance. See *People v. Wells* (1993), 241 Ill. App. 3d 141, 146, 608 N.E.2d 578, 583.

The issue of whether defendant possessed the crack cocaine with the intent to deliver, however, is more problematic. Evidence presented by the State revealed the amount of cocaine found in the pill vial exceeded that which was usually possessed for personal use. Additional evidence revolved around the street value of the cocaine and the fact that drug dealers typically carry weapons and large amounts of drugs and currency. (See *People v. Stone* (1993), 244 Ill. App. 3d 881, 890, 614 N.E.2d 293, 300.) Such testimony was of a nature which would be helpful to a jury in differentiating between those who use narcotics and those who deal narcotics. It is undisputed that defendant possessed no drug paraphernalia normally associated with users, such as hypodermic needles, straws, or pipes. (See *People v. Brown* (1992), 232 Ill. App. 3d 885, 890, 598 N.E.2d 948, 951.) By the same token, however, defendant did not possess a scale, packaging materials, or plastic bags normally associated with dealers. Moreover, the rocks of crack cocaine were not individually packaged in a fashion which would indicate that defendant was a dealer in cocaine rather than a user. See *People v. King* (1991), 218 Ill. App. 3d 248, 253, 578 N.E.2d 217, 218; *Brown*, 232 Ill. App. 3d at 890, 598 N.E.2d at 958.

Intent to deliver is a finding which must be made on a case-by-case basis; each case must be decided on its own facts. (*People v. Kline* (1976), 41 Ill. App. 3d 261, 266, 354 N.E.2d 46, 51.) Where a defendant possesses not only drugs but drug paraphernalia associated with dealing, as opposed to the use of drugs, and large amounts of cash and weapons, the inference of possession with intent to deliver is enhanced. (*People v. Berry* (1990), 198 Ill. App. 3d 24, 28-29, 555 N.E.2d 434, 437.) Possession with intent to deliver has been found where a defendant carried a smaller amount of cocaine than was involved here. In *People v. LeCour* (1988), 172 Ill. App. 3d 878, 527 N.E.2d 125, the defendant did not carry a large amount of currency and had no drug paraphernalia on his person, although he did possess 3.3 grams of cocaine. The court found the defendant guilty of possession with intent to deliver based on direct testimony of an informant who had previously purchased one gram of cocaine from the defendant and had arranged to purchase 3.3 grams the next day. When the defendant was arrested, prior to an actual exchange of money for drugs, at the agreed-upon delivery location, he possessed 3.3 grams of cocaine. The amount of cocaine he possessed was precisely that which had been agreed upon for delivery.

In *People v. Newman* (1991), 211 Ill. App. 3d 1087, 1094-96, 569 N.E.2d 1089, 1093, the defendant was found guilty of unlawful possession with intent to deliver based on constructive possession.

Defendant was arrested as he attempted to flee from an apartment which was used as a drug-processing depot during a drug raid. Two others were arrested. One man had .8 of a gram of cocaine and $273 on his person. The other man had previously been seen dealing drugs from the apartment and had $2,000.96. Defendant had $22 in his shoe and no drugs. Defendant had no connection with the apartment, which was filled with drugs, drug-processing equipment, cutting agents and guns and included no items associated with day-to-day living. Defendant had never been seen in the apartment in the past and was in the apartment about one-half hour prior to his arrest. The reviewing court found that circumstantial evidence supported the defendant's conviction for possession with intent to deliver based on constructive possession: his presence in a drug-processing apartment for a longer period than a normal "buy" would take and his attempt to flee from a back room where over 53.3 grams of cocaine were discovered were found sufficient to warrant conviction.

In *People v. McLemore* (1990), 203 Ill. App. 3d 1052, 1056, 561 N.E.2d 465, 467, the defendant possessed 3.3 grams of cocaine divided into 15 individual packets and either four or five $100 bills on her person. This court found that there was insufficient evidence presented to support the charge of possession with intent to deliver. Its opinion was founded, in part, on the fact that there was no evidence presented that 3.3 grams of cocaine were more than could have been consumed by the defendant in a six-hour interval, and the court stated that had the State introduced evidence to that effect, then the conviction could have been affirmed.

█ Although the State presented evidence in the instant case that the 4.07 grams of crack cocaine were sufficient to provide a user with four to five weeks of drugs, the lack of drug-dealer paraphernalia or individual packaging for resale and the lack of evidence of drug transactions or other, more positive, indicia of drug dealing lead us to the conclusion that defendant's conviction for possession of a controlled substance with intent to deliver cannot be sustained. (*People v. Crenshaw* (1990), 202 Ill. App. 3d 432, 434-36, 559 N.E.2d 1051, 1052-55.) While defendant had a large amount of cash on his person, he attributed it to income from the cleaning service he and his wife ran. In light of such circumstances, we reverse defendant's conviction and sentence for possession with intent to deliver. Pursuant to our authority under Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), however, we reduce the degree of the offense, entering judgment for the lesser offense of possession of a controlled substance (cocaine), and we remand for sentencing on the conviction for possession of cocaine.

Defendant's next contention is that he was provided ineffective assistance of counsel because counsel failed to object to the State's introduction of his testimony from the hearing on his motion to suppress as substantive evidence at trial and for the purpose of amending the information against him. At the time of the hearing, defendant testified that the pistol recovered from the cedar chest in Ms. Heard's living room was his and that he had left it on the kitchen table of the apartment prior to exiting the back door. He also testified that he did not have an FOID card at the time of his arrest. Following the May 7, 1992, motion hearing, the State amended the information against defendant to assert charges of unlawful possession of weapons and possession of a firearm without the requisite FOID. The State also read the entire transcript of the motion hearing into the record in its case in chief without objection.

In order to prevail on a claim of ineffective assistance of counsel, defendant must show both that his counsel afforded him representation which fell below an objective standpoint of reasonableness and that there is a reasonable probability that the outcome of the trial would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) It is not necessary to determine whether counsel's performance was deficient if the reviewing court may dispose of the claim of ineffective assistance of counsel on the basis that the defendant failed to demonstrate sufficient prejudice. *People v. Albanese* (1984), 104 Ill. 2d 504, 507, 473 N.E.2d 1246, 1256.

While defendant's admissions at a hearing on a motion to suppress evidence are not admissible at trial on the issue of guilt (see *United States v. Salvucci* (1980), 448 U.S. 83, 93, 65 L. Ed. 2d 619, 629, 100 S. Ct. 2547, 2254), they may be admitted for the purpose of impeachment if the defendant opts to testify (see *People v. Ortiz* (1990), 197 Ill. App. 3d 250, 257, 554 N.E.2d 416, 421). Trial counsel did not object to the entry into evidence of defendant's testimony of the motion to suppress, but defendant's new post-trial counsel did include it as an issue in his post-trial motion.

■ The introduction of defendant's motion to suppress testimony in the State's case in chief did not prejudice defendant to the point that his attorney's failure to object to its introduction altered the outcome of the trial. At the time the evidence was read by the State's Attorney, Ms. Heard had already testified she observed defendant remove the weapon from the back waistband of his trousers. One officer testified defendant had admitted to the authorities the gun was his, and two other officers testified defendant did not have an FOID card

when he was arrested. Defendant's testimony from the motion to suppress hearing therefore was merely cumulative. Under such circumstances, it cannot be argued but for the introduction of this evidence defendant would not have been found guilty.

■ Defendant further contends his counsel was inadequate because he failed to object to the filing of two additional counts by information, one for unlawful use of weapons and one for possession of a firearm without the requisite FOID card, after defendant testified at the motion to suppress. This argument also is without merit. Information known at the time of defendant's arrest and subsequent charge by information with unlawful possession of controlled substance with the intent to deliver was such that defendant eventually could have been charged on all counts. The timing of the amendment of the information does not in any way lead to the conclusion that but for defendant's testimony at the motion to suppress hearing he would not have been charged with the two additional counts. As the State notes, under section 111—2(f) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 111—2(f) (now 725 ILCS 5/111—2(f) (West 1992))), a defendant may be prosecuted for all offenses arising from the same transaction or conduct, even though the complaint or complaints filed after the preliminary hearing or waiver of preliminary hearing charged only one or some of the offenses arising from that transaction or conduct. Defendant herein waived preliminary hearing, and the offenses charged in the amended information arose from the same conduct as that which gave rise to the first information. Therefore, no prejudice accrued to defendant.

Defendant also contends on appeal that because he and codefendant Boyd were represented by the same attorney, he was denied his right to effective assistance of counsel. Defendant asserts defense counsel was prevented from presenting the best defense for him because of his obligations to his codefendant, Boyd. Defendant believes that their defenses were antagonistic, and had counsel not represented both defendants, he could have argued that Boyd was the person who possessed the crack cocaine.

A criminal defendant is guaranteed the right to effective assistance of counsel under the sixth amendment. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 343, 64 L. Ed. 2d 333, 343, 100 S. Ct. 1708, 1715.) The right to effective assistance of counsel mandated by the sixth amendment "entitles a criminal defendant to the undivided loyalty of counsel, free from conflicting interests or inconsistent obligations." (*People v. Thomas* (1989), 131 Ill. 2d 104, 111, 545 N.E.2d 654, 656.) Our supreme court found in *People v. Spreitzer* (1988), 123 Ill.

2d 1, 15, 525 N.E.2d 30, 35, that a *per se* conflict exists when defense counsel is tied to a person or entity, either another client, an employer, or counsel's own previous commitment, which would benefit from an unfavorable verdict for the defendant. The tie might affect subliminally counsel's performance in ways difficult to detect and demonstrate or subject the attorney at a later point in time to charges that his representation of the defendant was not completely faithful. (*Spreitzer*, 123 Ill. 2d at 15, 525 N.E.2d at 35.) Prejudice is presumed where a *per se* conflict exists and in those cases where a conflict is brought to the attention of the trial court at an early stage in the proceedings. (*Spreitzer*, 123 Ill. 2d at 18, 525 N.E.2d at 35.) The *per se* standard is not applicable where a defendant alleges ineffective assistance of counsel because of conflicts arising from joint representation of codefendants, however. (*People v. Washington* (1984), 101 Ill. 2d 104, 112, 461 N.E.2d 393, 397; *People v. Howard* (1988), 166 Ill. App. 3d 328, 332-33, 519 N.E.2d 982, 984.) In the absence of a *per se* conflict, the defendant has the burden of showing that an actual conflict of interest was manifested at trial through representation of codefendants by a single attorney. (*People v. Vriner* (1978), 74 Ill. 2d 329, 341, 385 N.E.2d 671, 676.) In order for a reviewing court to reverse a conviction, the defendant must show the conflict had an adverse effect on counsel's performance. (*People v. Holmes* (1990), 141 Ill. 2d 204, 219-20, 565 N.E.2d 950, 956.) "Actual" conflicts of interest have been found in joint trials where the same attorney represented two codefendants with antagonistic defenses (*People v. Martinez* (1982), 104 Ill. App. 3d 990, 992, 433 N.E.2d 981, 983); where a defendant's trial testimony was antagonistic to the interests of his codefendant such that the defendant became a witness against his codefendant (*People v. Taylor* (1988), 165 Ill. App. 3d 1016, 1021, 520 N.E.2d 907, 912); where an attorney representing codefendants succeeded in getting fingerprint evidence admitted which tended to exculpate one defendant by incriminating the other (*People v. Echols* (1978), 74 Ill. 2d 319, 325, 385 N.E.2d 644, 648); and where the credibility of codefendants represented by the same attorney was called into question and that credibility could not be restored without proving that at least one or the other codefendant was lying (*People v. Pico* (1987), 161 Ill. App. 3d 225, 231, 514 N.E.2d 224, 228). It does not create a *per se* conflict of interest to jointly represent two defendants where an alternative defense strategy might help one defendant at the expense of another. (*People v. Owens* (1987), 151 Ill. App. 3d 1043, 1048, 504 N.E.2d 186, 190.) The mere possibility that one strategy available to defense counsel would have helped one defendant at

the expense of another does not create hostility between the interests of criminal codefendants. (*People v. Sanders* (1991), 209 Ill. App. 3d 366, 375, 568 N.E.2d 200, 206.) A positive basis must be found for concluding that an actual conflict of interest exists, rather than a mere showing that an alternative strategy existed such as asserting that defendant herein was unaware of Boyd's possession of the cocaine and did not possess it himself. See *Sanders*, 209 Ill. App. 3d at 375, 568 N.E.2d at 206; *People v. James* (1992), 233 Ill. App. 3d 963, 973, 599 N.E.2d 960, 967.

■ Defense counsel clearly proceeded on a defense strategy that sought to attribute the presence of the crack cocaine in Ms. Heard's apartment to Ms. Heard, her live-in companion, or visitors to the apartment, a logical ploy given the State's reliance on an accountability theory. In the absence of a showing that an actual conflict existed which had an adverse effect on counsel's performance, defendant's claim of ineffective assistance of counsel is without merit.

Defendant next contends the trial court erred in denying his motion for mistrial based on a communication between an employee of the State's Attorney's office and a juror. Defendant asserts this communication prejudiced him because "implicit in the exchange between these individuals was a *quid pro quo*."

One of the jurors asked Carolyn Butcher, of the State's Attorney's office, what she might do to help her daughter, who had been a victim of a sexual assault about a year prior to defendant's trial and was having nightmares. She also apparently told Ms. Butcher that the sister of the defendant in the sexual assault case had contacted her. Ms. Butcher told the juror that she should obtain counseling for her daughter and that the sister of the defendant in the assault case should contact Ms. Butcher if she had any questions regarding her relative's case. Ms. Butcher testified, out of the presence of the jury, that there was no discussion of the instant prosecution. The trial court found no prejudice had accrued to defendant and accordingly denied defendant's motion for mistrial.

The *quid pro quo* envisioned by defendant seems to be that in exchange for information about obtaining counseling for her daughter and advice on how to handle the contact by the sexual assault defendant's sister, the juror would return a verdict favorable to the State. Ms. Butcher stated, however, that she had not offered to help the juror obtain counseling for her daughter. When defense counsel was offered the opportunity to question the juror, he declined to do so, based on his belief that Ms. Butcher had been honest in her answers.

■ While any communication with a juror during trial about a matter pending before the jury is deemed presumptively prejudicial to a defendant's right to a fair trial (*People v. Mitchell* (1992), 152 Ill. 2d 274, 341, 604 N.E.2d 877, 910), the presumption of prejudice is not conclusive, and a verdict will not be set aside when it is obvious that no prejudice resulted from the communication. (*People v. Harris* (1988), 123 Ill. 2d 113, 132-33, 526 N.E.2d 335, 342.) Ms. Butcher specifically stated that no discussion of the instant case took place. The trial court determined the contact between Ms. Butcher and the juror was not prejudicial to defendant, and defense counsel obviously agreed. We cannot say the trial court abused its discretion in this instance.

■ Defendant's final contention on appeal is that the trial court erred in imposing a fine of $10,000 without making a determination as to defendant's ability to pay such a fine. Because defendant's conviction for unlawful delivery of a controlled substance with intent to deliver has been vacated, we need not discuss this point further.

For the foregoing reasons, we reverse defendant's conviction and sentence for unlawful possession of a controlled substance with the intent to deliver. Pursuant to our authority under Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), we enter judgment for the lesser offense of possession of a controlled substance (cocaine) and remand to the circuit court of Alexander County for a new sentencing hearing on the conviction for possession of cocaine. We otherwise affirm all other convictions and sentences imposed on defendant.

Affirmed in part; reversed in part, judgment entered, and remanded.

GOLDENHERSH, J., concurs.

JUSTICE WELCH, concurring in part and dissenting in part:

I concur in all aspects of the majority's opinion except its finding that defendant was not proved guilty beyond a reasonable doubt of possession with intent to deliver. The majority finds that there is insufficient evidence to prove that defendant had the requisite intent to deliver the 4.07 grams of crack cocaine which he possessed. I cannot agree.

The evidence indicates that 4.07 grams of crack cocaine constitute approximately 40 doses, which is a larger amount of the drug than would normally be possessed by a drug addict for personal consumption. This amount is sufficient to provide an individual user with four

to five weeks' worth of the drug. Each dose of the drug sells for $20. At the time of his arrest, defendant was in possession of $860 in $20 bills. He explained that he carried these $20 bills for convenience because vendors did not like to change larger bills. He also testified that the $20 bills were income from a cleaning service which he and his wife operated in northern Illinois. The jury apparently did not find this to be credible and neither do I.

As the majority points out, it is the province of the jury to weigh witness credibility and to resolve conflicts or inconsistencies in the testimony (*People v. Phillips* (1989), 127 Ill. 2d 499, 514, 538 N.E.2d 500, 503), and we will not reverse a conviction unless the evidence is so improbable as to warrant a reasonable doubt of the defendant's guilt. (*People v. Eyler* (1989), 133 Ill. 2d 173, 191, 549 N.E.2d 268, 276.) An inference that the $20 bills came from the sale of doses of crack cocaine is quite reasonable in light of the testimony at trial that a single dose of the drug sells for $20. After viewing the evidence in the light most favorable to the prosecution, as we are bound to do, I cannot agree with the majority that no rational trier of fact could have found the elements of this crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) I would have affirmed the defendant's conviction for unlawful possession of a controlled substance with intent to deliver.